Haglin & Pope v. Rogers, Circuit Judge.

## HAGLIN & POPE V. ROGERS, CIRCUIT JUDGE.

1. CHANGE OF VENUE IN CIVIL CASES: *Payment of fees in fifteen days not necessary to transfer.*

A fair construction of the statute for the change of venue in civil cases is to allow the clerk, after the expiration of the fifteen days allowed for the payment of the fees, to waive their non-payment, and transmit the papers, if so disposed, although he cannot be compelled to do so; and to make the jurisdiction of the Court, to which the venue is taken, to depend not at all upon the payment of the fees to the clerk, but upon the reception of the papers, accompanied by the record, under seal of the order of the Court transferring the cause. ENGLISH, C. J., dissenting; holding that payment of fees within the fifteen days was prerequisite to jurisdiction.

For the facts of this case, see the dissenting opinion of Chief Justice ENGLISH, page 500, where they are fully stated, and are, therefore, omitted here. REP.

*Wm. Walker*, for petitioners.

Mandamus the proper remedy. 7 *Peters*, 634; *Green's Plead, and Practice*, 1178–1187; *People* v. *Sup. Court*, 10 *Wend.*, 285. The general rule that a mandamus will not lie, when party has another remedy, must be understood to refer to some *specific* remedy, which will place the party in the same situation in which he was before the act complained of. *Etheridge* v. *Hall*, 7 *Porter*, 47; *People* v. *Supervisors*, 12 *Barber*, 217; 17 *Ala.*, 527; 13 *Penn.*, *St.* 72; 2 *Nash*, 1306.

When it is the manifest intent of a statute to give protection to individuals who are *sui juris*, the act prohibited is voidable only by proceedings by the person intended to be protected. *State* v. *Richmond*, 26 *N. H.*, 232; *Green* v. *Kemp*, 13 *Mass.*, 515; *Rix* v. *Hipwell*, 8 *B. & C.*, 466, 470; *St. Nicholas* v. *St. Peter*, *Stra.*, 1066; *Terrell* v.

*Auchanen*, 14 *Ohio*, 80 ; *Beecher* v. *Marquette, etc. Mill Co., Reporter, Vol. XI, No.* 15, *Apl.* 13, 1881.

After change of venue made and case transferred, the court cannot dismiss because of omission to pay costs. 20 *Mo.*, 159 ; *Snow Ex-Parte*, 28 *Ark.*, 471.

*F. W. Compton,* for petitioners.

I. The court has jurisdiction. See cases cited by Mr. Walker, and *Beecher* v. *Marquette, etc., supra.*

II. Mandamus proper remedy. *Ex-Parte Bradstreet,* 6 *Peters,* (*U. S.*) 647 ; *Saunders* v. *Nelson, Ut. Ct., Hardin's Rep.* (*Ky.*) 17, (precisely in point) ; *Kemp* v. *Porter,* 6 *Ala.*, 172 ; 7 *Ib.*, 459 ; 4 *Ib.*, 569 ; 34 *Ib.*, 446 ; 46 *Ib.*, 384 ; 5 *Ib.*, 130 ; 4 *Ib.*, 339 ; 9 *Ark.*, 240 ; 14 *Ark.*, 368 ; 10 *Ark.*, 243.

*M. H. Sandels,* for respondent.

I. The act was the exercise of a judicial discretion.

II. The construction given the Act Jan. 23d, 1875, was a correct one.

Mandamus should not be awarded when court has discretion. 3 *Black. Com.*, 110 ; 2 *Strange*, 881 ; 19 *Johnson*, 260 ; 5 *Wendell*, 122 ; 34 *Ark.*, 394 ; 18 *B. Mon.*, 426.

The Act mandatory, not directory. *Dwarris on Statutes* ; 9 *Porter.* (*Ala.*) 268, 269 ; 34 *Ark.*, 491.

It is only where the meaning of the Legislature is obscure, and cannot be educed from the Act, that the courts can construe it. *Sedgwick Stat. and Con. Law,* 379.

Provision not for benefit of clerk, but of adverse party.

As to construction of statute, see 4 *Nebraska*, 336 ; 7 *Nevada*, 108 ; 13 *Wallace*, 511 (*First paragraph*) ; 60 *Penn. St.*, 464, 466.

EAKIN, J.  By Act of January 23, 1875, any party to a suit, upon his own verified petition, supported by the affidavits of two credible witnesses, may obtain an order for a change of venue.  The order may be made in term time, at the calling of the case, or by the judge, at any time, on due notice to the adverse party or his attorney.

Section 4 of the Act provides that in all cases where such order may be made, the clerk shall make a certified copy of all the orders in the case, and "*upon the payment of the transmission fees, hereinafter provided,*" shall transmit the papers in the case to the clerk of the court to which the venue is changed, for which he shall receive ten cents a mile both ways, to be paid by the party obtaining the order.

Sec. 5 is, in full, as follows:  " If the above mentioned fee is not paid, or arranged with the clerk, within fifteen days from the granting of said order, the order shall be null and void.  *Provided*, That the judge granting the order may extend the time of making such payment, which shall be stated in the order.  *Provided* further, That the adverse party, if he chooses, may make such payment.  But one order for a change of venue shall be granted to the same party in the same action."

By Section 6, it is provided that the action shall stand for trial in the court to which the change is made, at the first term commencing more than ten days from the filing of the papers in its office.

In this case the papers were transmitted to, and filed in the office of the Crawford Circuit Court, more than ten days before the commencement of its next term after the order had been made, but the fees were not paid nor arranged, as the affidavit states, within fifteen days after the order.  The only question is, upon the construction of the 5th section.

Is it imperative that the fee should be paid or arranged within the time, or the order shall be as if never made? Or is it allowable to the clerk to transmit the papers within a reasonable time upon payment of the fee, or without any payment of the fees at all?

1st. As to the propriety of the writ of mandamus.

The law never presumes nor admits its own uncertainty. Acts may be difficult to construe; principles hard to discover. They may require of the judges patient thought, laborious investigation of authorities, and the aid of learned counsel. But when constructions are made, or principles cleared, the courts *adjudge* the law. They do not create or determine it by discretion. It is announced as what it was, and is. If a law be indeed mandatory, leaving in the judge no discretion as to obedience, it is none the less so, because he may at first mistake its meaning, or find it difficult of discovery. The duty to construe, does not destroy the obligation of obedience, nor make that a matter of judicial discretion, which, if more clearly expressed, would at first have been seen to be mandatory.

The Hon. Circuit Judge construed the law to be, in accordance with the plain import and strict construction of the *language* of the Act, and made the efficacy of the order for removal to depend alone upon the *fact* of payment, or arrangement; holding that to transfer the jurisdiction, the fee must not only have been paid to, or arranged with, the clerk, but also that it must have been done within fifteen days from the time of making the order; holding further, that the failure was a matter which might be shown by affidavit.

Statutes are to be construed according to the *intention* of the Legislature, of which the *language* of the Act is ordinarily the test, but not always the conclusive indication. Cases sometimes arise in which the courts, to reach the *true* intention, must disregard the ordinary significance of

the language. Neither grammar nor etymology are parts of the Common or Statutory Law. They constitute its " context," in which, according to the quaint old English writers, it is not well to stick. They but clothe the Legislative intent, which makes the *equity* of Statute, and is more potent than language. After the intention is *discovered*, then the courts have nothing to do with its policy, but must enforce it, if constitutional.

Mr. Sedgwick, in his work on *Const. and Statutory Law*, *p.* 254, 2*d Ed.*, supporting the remark by full citations, says : that it "has been repeatedly asserted and practiced upon by the highest authority " that in construing a Statute, "the judges have a right to decide, in some cases, even in *direct contravention* of its language." The remark has been approvingly quoted by Mr. Hammond in his notes to *Sie-bers " Legal and Political Hermenentics," appendix, p.* 285 ; and the digests of the several American States show its universal adoption. Let us be content for the present to notice some decisions to the same effect, of our own, as follows : *Reynolds* v. *Holland,* 35 *Ark.,* 56 ; *Haney* v. *The State,* 34 *Ib.,* 263 ; *Wassell* v. *Tunnah,* 25 *Ib.,* 101 ; *McKenzie* v. *Murphy,* 24 *Ib.,* 155.

In *Woodruff* v. *State,* 3 *Id.,* 285, it was held, that when the intention of a Statute should be discovered, it ought to be followed, although it might seem contrary to the letter. In *Wilson* v. *Biscoe,* 11 *Ib.,* 44, it was considered that, if from a view of the whole Act, the *intent* is different from the literal import of some of its terms, then the intent should prevail.

By *Sec.* 2 *of Chap.* 101 of the *Revised Statutes,* it was provided that "every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record *and not before."* No language could be stronger,

more express or explicit to convey the idea, that a mort-gage should be no lien at all, before that time. Yet this court in *Main et al.*, v. *Alexander*, 9 *Ib.*, 112, held and has ever since rigidly adhered to the position that every mort-gage *was* a lien between the parties, from the time of its execution, whether recorded or not. Chief Justice Johnson, in delivering the opinion, conceded that the language of the Act was exceedingly broad and comprehensive, and, if taken in a literal sense, would forbid the creation of a lien by an unrecorded mortgage. Yet the court would not conceive that the Legislature *really intended* so unreasonable a thing as to prevent parties from making such contracts between themselves, where third persons could not be injured; although there was nothing in the law, beyond the reason of it, to show that the Legislature meant any thing else than it had said. A stronger case of the utter disregard of lan-guage, subordinating it wholly to intention, in the absence of all constitutional objections, cannot be found. The pro-priety of this decision, in this respect, has never been ques-tioned.

With these views we will return to the case in judgment.

The Act is strictly remedial, and to be construed liberally, to meet the evil intended to be alleviated, and to advance the remedy. "Everything is to be done in advancement of the remedy that can be given, consistently with any con-struction that can be put upon it." *Sedgwick on St. and Const. Law, p.* 309. The evil to be avoided was the hard-ship of compelling suitors to go to trial in any county, where there might be against them, or their cause, an undue prejudice. Every citizen instinctively feels the injustice of being compelled to submit to this, and a change of venue is almost necessary, to preserve confidence in the impartiality of the courts. This policy of changing the venue is to be advanced, and not embarrassed nor retarded, and those con-

structions which have the latter effect are to be avoided, if any others can be found consistent with the intent.

A secondary policy is also manifest, with the evil it is intended to remedy. The expense of transmitting the transcript between the counties, if made to fall upon the clerk, would be oppressive—even if he were only required to advance them, to be ultimately repaid. They would, in each case, be certain, being twenty cents for each mile of distance. It was a plain, sensible, and obvious provision to require that the sum requisite for the purpose should, at an early day, be deposited with the clerk; and, as an incentive to prompt payment, to provide that unless that were done, the order made upon him, though peremptory in its terms, should have no binding force. He need not obey it, even if payment should be afterwards tendered. As to himself, he might consider its efficacy gone—" null and void." But there is nothing within the Act which rigidly requires him, in any case, to send over the papers within any definite time. They ought, if reasonably possible, to be at their destination full ten days before the term of the court to which the venue may be changed; but he might not be able to do that in fifteen days—even if the fee had been paid to him the day after the order; and there is nothing apparent, in the reason of things, which would seem to preclude him from sending them with or without any tender, or payment, or arrangement for the fee, at all. Upon the other hand, it is suggested very plausibly, and the suggestion has received the grave consideration it deserves, that the clause of the proviso is *not* wholly, nor even principally, for the benefit of the clerk; but that it is the policy of the Act to require payment in the limited time to stand as notice to the opposite party that the removal has been perfected, and the order converted from a conditional to a positive nature. If this were the design, the

32—37

clerk could not receive the fee after the time, nor transmit the papers so as to have any effect.

There · is nothing in the language of the Act to indicate any intention other than that of protecting the clerk. In the first place, such notice as is supposed does not seem highly essential. The order for the change is made either in open court, with the knowledge of all parties; or in vacation, on express notice. The opposite party knows where to follow the case; and, if the papers are not transmitted ten days before the next term, he knows that he need not attend. The Circuit Court business is done through attorneys, whose easy access to, and familiarity with, the clerks, render it easy, at all times, to keep watch of the case. But, above all, we feel sure that if the Legislature had meant to provide that the opposite party should know, definitely, in fifteen days, to which court he was to resort thereafter, or had had that in view, in framing the Act, it would have adopted some apter mode, than to require that knowledge to be ascertained from something done privately between the petitioner and the clerk—or something which need not be done at all, but only in some vague fashion arranged; and concerning which the clerk need make no public entry, nor, so far as the law is concerned, tell a human being. Such an intention is not reasonably to be presumed from anything in the language of the Act. It is ingeniously reasoned out, but, after all, it is a mere speculation as to intent. The Legislature might have effected the policy indicated, very easily, by directing that the order for change of venue should be provisional, on the subsequent performance of some act in the clerk's office within a certain time, to be noted of record, which would be notice to both courts, and to the parties in the suit, of the precise time when the jurisdiction had shifted. It did not do that, nor intimate an intention of accomplishing such an object.

Many inconveniences, with much confusion and uncertainty of jurisdiction, would surely arise from adopting the construction of the respondent. Neither court might, for a long time, know where the jurisdiction really was, and much work might be idly done. For, if the objection be good at all, it would, in local causes, remain good after years of litigation and enormous expense. It might, then, be insisted for the first time, by one party or the other, that the fee had not been really paid within fifteen days, but in sixteen, or some other time ; and the clerk had concealed the fact. Or, if the papers had not been transmitted, and the cause had proceeded in the original court, it might transpire that the fee actually had been paid in the fifteen days, and, for some cause, or change of purpose, the papers had not been sent. In either case, the whole proceedings might be void ; in the first, because jurisdiction had never been acquired ; in the last, because it had been irrevocably divested. Besides, it does not comport with the respect and confidence due the records of Superior Courts, to make the validity or invalidity of orders positive on their face, depend upon the occurrence or non-occurrence of trivial facts en pais, between individuals. We will not readily attribute to the Legislature such intent.

A fair construction of the Statute—the one attended with the fewest inconveniences, and absurdities, is to allow the clerk, after the fifteen days, to waive the non-payment of the fees, and to transmit the papers, if so disposed, although he can not be compelled to do so, and to make the jurisdiction of the court, to which a change of venue may be taken, depend, not at all upon the small matter of the payment or arrangement of a few dollars with the clerk, but upon the reception of the necessary papers, accompanied by the record, under seal, of the solemn order of the court transferring the cause.

We think the response to the alternative writ insufficient, and direct that it be made peremptory.

ENGLISH, C. J., dissenting. Differing with my brother Judges in this case, I will state my reasons for dissenting.

The facts are briefly as follows:

In a civil suit pending in the Circuit Court of Sebastian county, for the Fort Smith district, in which Haglin & Pope were plaintiffs, and Falconer and others were defendants, an order was made by the court, upon the application of the plaintiffs, on the fifth of January, 1881, for change of venue to the Circuit Court of Crawford county.

The papers in the suit, and a transcript of the record entries, were filed in the office of the clerk of the Circuit Court of Crawford county, on the first of April, 1881, and the next term of that court commenced on the eleventh of the same month.

At that term of the Crawford Circuit Court the defendants in the suit filed a motion to strike the cause from the docket, for want of jurisdiction, because the transmission fees had not been paid to, or arranged with, the clerk of the Circuit Court of Sebastian county for the Fort Smith district, within fifteen days from the date of the order made by that court for the change of venue, as required by the Statute.

In support of the motion, the affidavit of J. C. Stalcup was filed, in which he states, in substance, that he was the deputy Circuit Clerk of Sebastian county, for the Fort Smith district. That his principal, W. J. Fleming, was in charge of the office in the town of Greenwood, in the Greenwood district of said county; and that affiant had charge of the office at Fort Smith, in the Fort Smith district, and attended to all the business of the office. That no one else

transacted any of the business. That Fleming occasionally visited the office at Fort Smith, but did not perform any of its duties, nor did he receive any fees, or arrange for them. Affiant remembered the order for change of venue, in the case of *Haglin & Pope* v. *Falconer*, and others made on the fifth of January, 1881. The fees required by law to be paid him were not paid or arranged with him within fifteen days from the date of the order for change of venue. Something was said to him about making out the transcript about three months before he made it, and he was then told that the fees would be ready when the transcript was made. The fees were paid on the twenty-sixth of March, 1881.

On the hearing of the motion the court found, as matter of fact, that the order for the change of venue was made fifth of January, 1881, and that neither the plaintiffs nor defendants had paid or made arrangements with the clerk of the Circuit Court of Sebastian county for the Fort Smith district for the fees allowed him by law for transmitting the papers in said case to the clerk of the Crawford Circuit Court until the twenty-sixth March, 1881, which was more than fifteen days from the date of the order changing the venue ; and the court declared, as matter of law, that the fifth section of the *Act of January* 23, 1875, requiring the transmission fees to be paid or arranged within fifteen days, etc., was mandatory, and the failure to do so rendered the order for change of venue null and void. Wherefore, the court sustained the motion, and ordered the cause stricken from the docket and files of the court for want of jurisdiction.

The plaintiff filed a motion to vacate this order, and to reinstate the cause upon the docket, and to proceed to the trial thereof, which motion the court overruled, and plaintiff took a bill of exceptions, setting out the facts.

Afterwards the plaintiff applied to this court for a mandamus, to compel the Hon. John H. Rogers, as Judge of

the Crawford Circuit Court, to reinstate the cause on the docket, and to proceed to the trial thereof.   An alternative writ was awarded, in response to which his Honor, the Circuit Judge, stated no facts, other than such as are shown by the transcript of the record accompanying the petition for mandamus, but adhered to his opinion, that the Statute in question was mandatory.

The order of the court, striking the cause from the docket and from the files, for want of jurisdiction, whether rightfully or wrongfully there, was in the nature of a final order disposing of the case, which might be reviewed on appeal or writ of error.

It was the judgment of the Circuit Judge that the order changing the venue was null and void, by reason of the failure of the relators to comply with the condition, in legal effect, on which it was made, under the Statute, and it is submitted, with all due respect for the views of my brother Judges, that the purpose of this case is to control his judgment by mandamus.

Passing over this question of appellate practice, however, and proceeding to the principal question in the case, the first, second and third sections of the Act of 23d January, 1875, provide that any party to a civil action, triable by jury, may obtain a change of venue in the manner, and for the causes indicated, in term time or in vacation.   Section 4 provides that in all cases where an order for a change of venue is granted, the clerk shall make and file with the papers a certified copy of all orders in the case, and upon the payment of the transmission fees, hereinafter provided, shall transmit the papers in the case to the clerk of the court to which the venue is changed, by any safe and convenient mode which he may select, he being responsible for the same, for which he shall receive ten cents per mile to

and from said clerk's office, to be paid by the party obtaining the order, and to be taxed in the costs."

Section 5 provides in plain and unambiguous language, that "if the above-mentioned fee is not paid or arranged with the clerk within fifteen days from the granting of said order, *the order shall be null and void, provided*, that the judge granting the order may extend the time of making such payment, which shall be stated in the order ; *provided* further, that the adverse party, if he chooses, may make such payment. But one order for change of venue shall be granted to the same party in the same action."

It cannot be supposed that the lawmakers did not understand the meaning of the plain words used in the 5th section : " The order shall be *null and void*," and there is nothing in the whole Act from which it may be inferred that they were intended to be used in a different sense from that which they express.

A party to a civil action has no constitutional right to a change of venue. It is a favor which the Legislature may grant or withhold at its pleasure ; and it may be granted on such terms and conditions, and under such regulations as the Legislature may think proper to prescribe.

There is nothing hard or unreasonable in the provision of the Act, that the party obtaining the order for change of venue shall pay to, or arrange with, the clerk, the transmission fee within fifteen days from the granting of the order, or it shall be null and void. If he thinks, when he obtains the order, that he will not be able, or it will not be convenient for him to pay the cost of transmission within the fifteen days, the court is authorized to extend the time, on his application. The amount to be paid will be easily ascertained when the court names the county to which the venue is to be changed. If he does not ask for extension, and neglects to pay or arrange the fee with the clerk, within

the time prescribed by the Act, as in this case, it is his own fault that he forfeits the benefit of the order.

Whether it was wise or unwise for the Legislature to declare that the order should be null and void, upon such failure, is not a question for the courts. It is not their province to make or alter the law, but to administer it as written ; nor can they resort to strained constructions to avoid what they may regard as an inexpedient or rigid provision of an Act.

The rule is well established, that where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature must be intended to mean what it has plainly expressed ; and, consequently, no room is left for construction, *Eason* v. *State*, 11 *Ark.*, 495..

The fittest course, (says Mr. DWARRIS,) in all cases where the intention of the Legislature is brought in question, is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the Act of Parliament. The judges are not to presume the intentions of the Legislature, but to collect them from the words of the Act, and they have nothing to do with the policy of the laws, etc. *Ib.*

If the Legislature had merely declared that the transmission fee should be paid or arranged within fifteen days, and said nothing more, this might have been treated as directory. But the Act goes further, and declares what shall be the consequence, or penalty, for failure to comply with its requirements ; and that is, that the order changing the venue shall be null and void ; and this is the test that it was intended to be mandatory. *Falconer* v. *Shores, ante* 386.

In *Main et al.* v. *Alexander*, 9 *Ark.*, 116, the words of the statute, providing for the registration of mortgages, being plain, the court did not resort to construction, but

followed them. Registration was unknown to the common law. The object of the registration statutes was the protection of subsequent purchasers and creditors. The statute plainly provided that a mortgage properly acknowledged should be a lien on the mortgaged property, from the time it was filed in the recorder's office, and not before, and so the court said, But, of course, between the parties, the unregistered mortgage was valid, as at common law.

It is true, that where it is necessary to resort to construction, and the intention of the Legislature is clearly manifested by the scope of the Act, particular words may be made to yield to that intention, and some of the cases cited by Brother EAKIN illustrate that rule. But, in the section of the Act in question, the lawmakers have plainly said that if the transmission fee be not paid or arranged within the time prescribed, the order changing the venue shall be null and void, and there is nothing in the whole act from which it may be inferred that they did not mean what they said.

Courts would have saved much trouble and prevented litigation if they had followed the plain words of Statutes, and administered them as written, instead of resorting to strained construction, as they have frequently done, to get rid of provisions which seemed to them rigid or unwise.

It is conceded by my brother Judges that if the fee is not paid or arranged within the time limited by the act, the clerk cannot be compelled thereafter, on tender, to make out and transmit the transcript and papers. And why not, if the act is merely directory, and the order changing the venue does not become null and void on the failure?

If not null and void on such failure, when does it become so? If some other time or contingency be named, it is not in the Act; the Legislature having prescribed no other event on which the order is to become null and void.

In this case the clerk was not paid the fee, and did not

transmit the papers to the Crawford Circuit Court until nearly three months after the order was made. If such neglect and delay did not avoid the order, why should neglect and delay for six months or a year avoid it? If the Statute is to be treated as directory and not mandatory, then it should be left to the sound discretion of the Circuit Court to determine what measure of neglect should deprive the party obtaining the order for change of venue of the benefit of it, and such discretion, unless abused, would not be overruled on appeal or writ of error, and certainly not on mandamus.

The clerk is not alone concerned in a compliance with the Statute. On the expiration of the fifteen days the party against whom the order for change of venue is made has the right to inquire of and be informed by the clerk whether the Statute has been complied with. If not, he may regard the order as avoided, and make no preparation for the trial of the case in the court, to which the venue is changed. If after that the clerk may at any time accept the fee, and transmit the papers, the party relying upon the Statute may be surprised and put to disadvantage.

Under the view of my brother judges, the order may be void or valid, at the will and pleasure of the clerk, where the fee has not been paid or arranged within the time fixed by the Act. The law is not so written.

In my judgment a peremptory mandamus should not be awarded against the Circuit Judge in this case.