PHILO JOHNSON, Respondent, *v.* THE HUDSON RIVER RAIL-ROAD COMPANY, Appellant.

By the provisions of section 49 of the general railroad act of 1850 (chap. 140, Laws of 1850), all the powers and privileges contained in the act, without distinction or discrimination, were conferred upon corporations then existing whether created by special charter or formed under the general act of 1848; but no duties, liabilities or burdens were imposed upon them, except such as were contained in certain sections enumerated, and which were "not inconsistent with the provisions of their charters." This latter limitation is not a part of the clause granting the powers and privileges, and in no sense affects it. The legislature intended by this section that corporations then existing should not only possess and enjoy like powers and privileges, but those of the same character, measure and extent as were to be conferred upon corporations organized thereunder. Where, therefore, a corporation then existing was limited by its charter to a rate of fare for the carriage of passengers less than that prescribed by the act, *i. e.*, three cents a mile (sub. 9, § 28), by the act it was authorized to increase its rates to a sum not exceeding that thus prescribed. (CHURCH, Ch. J., dissenting.)

When the language of a statute is definite and has a precise meaning, it must be presumed to declare the intent of the legislature, and it is not allowable to resort to other means of interpretation or by conjecture to restrict or extend the meaning.

(Argued September 11, 1871; decided May 21, 1872.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought under the "act to prevent extortion by railroad companies" (chap. 185, Laws of 1857), for alleged taking of illegal fare by defendant.

Plaintiff resided at Spuyten Duyvil and was a daily passen-

ger on defendant's road to and from New York. The distance was a fraction over ten miles. Plaintiff from May 10, 1865, to May 9, 1866, traveled over the road 526 times. By the act under which defendant was incorporated (Laws of 1846, p. 280), as modified by the act of 1850 (Laws of 1850, p. 14), defendant was prohibited from charging for way travel a greater sum than two and a half cents a mile during December, January, February and March, and two cents per mile for the residue of the year. It charged plaintiff thirty cents fare from Spuyten Duyvil to New York during the months mentioned and twenty-five cents the balance of the year.

The referee found that defendant charged a greater fare than was authorized, and was liable to pay the penalty of fifty dollars for each time proved, and directed judgment for the amount thereof, together with the excess of fare, to wit: the sum of $26,315.01. Judgment was entered accordingly.

*Charles O' Conor* for the appellant. Where the language of an act is clear and explicit, the court has no power to give it a different effect. (*Bidwell* v. *Whittaker*, 1 Manning, 479; *Pearce* v. *Atwood*, 13 Mass., 343.) To extend the forty-ninth section of the act of 1850, so as to involve excusable misinterpretation in vindictive penalties, would violate sound principles. (1 Black. Com., p. 88, sub. 4, Wendell's note, 40; *Fish* v. *Fisher*, 2 John. Case, p. 90; *United States* v. *Cantril*, 4 Cranch U. S. R., 167; *In re Schooner Enterprize*, 1 Paine's C. C. R., 33, 34; *Commonwealth* v. *Macomber*, 3 Mass. R., 257; *Parry* v. *Croydon Gas Co.*, 15 J. Scott's Com. Bench Rep. [N. S.], 575, 576.)

*E. M. Wight* for the respondent. Defendant was limited by its charter to the rate of fare therein prescribed. This power was not extended by the general railroad acts. (*Chase* v. *N. Y. C. R. R. Co.*, 26 N. Y., 524; *Nellis* v. *N. Y. C. R. R. Co.*, 30 id., 513; *Dickson* v. *H. R. R. R. Co.*, 12 id., 314.)

ALLEN, J. The right of the defendant to demand and receive for the transportation of passengers a greater sum

than that allowed by its act of incorporation, as modified in 1850, depends upon the interpretation of the 49th section of the general railroad law of the same year, enacted some two months after the amendment of the charter referred to.

By the act incorporating the defendant, as modified by chapter 9 of the Laws of 1850, the "power and privilege" was conferred upon the corporation to fix, regulate and receive tolls and charges for the transportation of passengers at rates for way-travel not exceeding two and a half cents per mile for each passenger and his ordinary baggage, during four months, and two cents during the residue of the year. (Laws of 1846, p. 272; Laws of 1850, p. 14.)   The franchise or privilege was restricted and limited by the terms of the legislative grant, the restriction and limitation being a constituent part of the grant itself.   There was no general privilege of regulating and demanding toll for the transportation of passengers, but the right was restricted within prescribed limits.   The privilege was by its very terms of a limited and restricted character; a franchise limited, in its exercise, to the rates prescribed by the statute conferring it.   It was a privilege of transporting passengers for hire at rates not exceeding those specified by the act.   Similar privileges had been conferred by the legislature upon other railroad corporations, but never had the privilege been granted with the same restrictions.   The privileges of this character enjoyed by other corporations were more liberal, and were not therefore the same.   The power of demanding and receiving two cents per mile for a given service is of the same general character as that of demanding and receiving a larger sum for the same service, but it is not the same power.

Two bridge companies may each have the right to tolls, but if one is restricted to a toll of two cents for each passage while the other may receive a larger sum, or may regulate its own charges without limit, the privileges, the franchises and powers of the two are materially different in extent, description and pecuniary value.   Prior to 1850 the legislature had granted to the defendant the privilege of receiving one sum

for the transportation of passengers, and to other like corpo-
rations the privilege of receiving a greater sum for the same
service.    Up to 1848, all railroad corporations were created
by special acts of the legislature, the charter of each prescrib-
ing its special duties and privileges.

By the Constitution of 1846, as well to place all corpora-
tions of the same character upon the same general footing,
with uniform powers, privileges and duties, as to obviate the
necessity of much special legislation, corporations were author-
ized to be formed under general laws, and the creation of any,
except for municipal purposes, and in cases where the objects
of the corporation could not in the judgment of the legislature
be attained under the general laws, was prohibited.    (Const.,
art. 8, § 1.)    One design was, that all that desired to transact
business in a corporate capacity might do so upon an equality,
and with equal privileges and liabilities, with uniform pow-
ers, and under uniform restraints.    Equality between corpo-
rations themselves, as well as equality between corporations
and individual citizens, so far as the latter was practicable,
was in the minds of the convention in framing this part of
the Constitution.

Not only was the policy of equality of privileges among
corporations of the same class and general character, includ-
ing municipal corporations, advocated, but uniform restrictions
upon, and liabilities of all corporations urged by some who
took part in the debates of the convention.

The first general act for the formation of railroad corpora-
tions, pursuant to this constitutional requirement, was passed
March 27, 1848.    (Laws of 1848, p. 221.)    By the 10th sub-
division of section 19, corporations formed under the act were
permitted to regulate the tolls and compensation for the trans-
portation of passengers at rates not exceeding three cents per
mile, except as otherwise provided by special act of the
legislature.    In the amendment of this act in 1850, the
exception was stricken out and the limit to the amount
made absolute, and perfect equality between corporations
organized under its provisions secured.    (Laws of 1850,

chap. 140, § 28, sub. 9.) By section 46 of the act of 1848, it was enacted, that " all existing railroad corporations within this State shall respectively have and possess all the powers and privileges, and be subject to all the duties, liabilities and provisions contained in this act, so far as they shall be applicable to their present conditions, and not inconsistent with the several charters." The legislature, lest this grant of privileges should exempt certain existing corporations from the payment of canal tolls upon freight, imposed by chap. 270 of the Laws of 1847, expressly provided in the same section that it should not operate to effect such exemption. The general railroad act of 1848 was revised, materially amended and modified, and re-enacted in 1850, chap. 140. By sub. 9 of section 28 of the revised act, power was given to the corporations formed under it to regulate the compensation to be paid them for transportation of passengers, at not to exceed three cents per mile.

Section 46 of the act of 1848, in a substantially new form, became section 49 of the act of 1850. The section, as amended, reads as follows: " All existing railroad corporations within this State shall respectively have and possess all the powers and privileges contained in this act; and they shall be subject to all the duties, liabilities and provisions not inconsistent with the provisions of their charter, contained in sections nine, etc. (naming thirteen sections, and excepting sub. 9 of § 28), of this act."

The language of the section is chosen with discrimination, and an evident distinction made between benefits conferred and obligations imposed.

In respect to powers and privileges, which are favors granted, they may be accepted and exercised or rejected, at the option of the corporations to which they are tendered, and therefore all the powers and privileges contained in the act, without distinction or discrimination, are conferred upon corporations then existing, whether created by special charter or formed under the general act of 1848. By this provision a perfect equality and uniformity in the matter of pow-

ers and privileges between all the railroad corporations of the State was accomplished, except in respect to a few having by their charters special privileges, and all had the same rights. But as to the duties, liabilities and like subjective provisions of the act, respect was had to existing charters, and no privileges, specially granted, were taken away. No duties, liabilities or burdens were imposed upon existing corporations except such as were contained in certain sections of the act, and were not inconsistent with their respective charters. The charters were regarded as *quasi* contracts with the several corporations, and if by reason of a right reserved they might be constitutionally amended or repealed, the legislature were careful not to do so in this general act in a way to change the condition of the company for the worse. Hence, all powers and privileges were absolutely conferred irrespective of charter provisions, and certain duties and liabilities, so far as they were not inconsistent with the chartered rights and privileges, were imposed. The section is so framed, and the whole sentence is so constructed, that the phrase "not inconsistent with the provision of their charter," cannot be imported into and made a part of the clause, granting powers and privileges, by any allowable process of interpretation. It certainly does not belong there grammatically. It would be equally admissible to interpolate for the purpose of enumerating and limiting the privileges conferred, the several sections specifically referred to as prescribing the duties imposed. The words employed in the two branches of the section are also significant. The word "possess" is proper and expressive, as used in the bestowment of rights or benefits, and the word "subject" is alike proper in imposing liabilities or an obligation to obey some law or perform some duty. There is and can be no inconsistency between a charter provision and a subsequent act enlarging the powers and extending the franchise of a corporation. Enlarged powers are not inconsistent with lesser powers; the lesser may be included or merged in the greater, but the two are not inconsistent, and it is by no means material whether the enlargement of the franchise, the

additional power conferred, consists in the grant of an entirely new power or right, or the removal of some restriction or limitation attached to the exercise of a power or right originally conferred. In either case a power or privilege is conferred, a franchise granted which the corporation did not before possess. If banks created by special charter were prohibited from discounting bills having more than thirty days to run, or at a greater rate of interest or discount than five per cent per annum, and a general law should be enacted providing for the incorporation of banking corporations with authority to discount bills without limit as to time and at a greater rate of interest or discount, and the same act should declare that all existing banking corporations should possess the same powers and privileges as were conferred by the act upon corporations formed under it, there would be but little hesitation in declaring that the effect would be to remove the restriction and limitation of the charters as to the character of the bills that might be discounted and the rate of interest that might be taken. So long as restrictions and limitations were imposed upon one class of corporations that were removed from or were never imposed upon the others, the powers and privilege possessed by each were not the same. The legislature, by declaring in the comprehensive language of the act that the corporations then existing should possess all the powers and privileges conferred upon corporations formed under the act, clearly intended that they should possess and enjoy not only the like privileges, privileges of the same character, but privileges and powers the same in character, measure and extent. Had they intended anything less than this, they would have so said, as they did, in terms, in respect to tolls upon freight carried by certain of the railroad corporations.

If the legislature designed to continue the restrictions and limitations of the powers of existing corporations imposed by their charters, which were not imposed upon corporations formed under the act, or to withhold from them powers conferred upon corporations to be formed, they should have so said. It is not for the court, acting upon conjecture and sur-

mising what may have been the intent of the legislature, to interpolate exceptions in the statute, thus in effect avoiding and nullifying the express declaration of the legislature, that these two classes of corporations shall possess the same powers and privileges.

By the provision, existing corporations were put in possession of all the powers and privileges "contained in the act," and made subject, that is, required and bound to perform the duties, discharge the liabilities and obey the provisions contained in certain sections of the act, and which were not inconsistent with their charters.

The section, for all the purposes of this action, should be read and interpreted as if it had ended with the first clause, and no reference had been made to liabilities or duties. So read, the statute is unambiguous and in no need of interpretation. The language of the act being explicit, and the words free from ambiguity and doubt, capable of being read and understood, expressing plainly and distinctly the sense of the framers of the act, there is no occasion to resort to other means of interpretation. Where the language is definite and has a precise meaning, it must be presumed to declare the intent of the legislature, and it is not allowable to go elsewhere in search of conjecture to restrict or extend the meaning. *McCluskey* v. *Cromwell* (1 Kern., 593), and cases cited. The provision here is clear and precise, and courts cannot go beyond or outside of it under pretext of interpretation to cure any supposed blunder of the legislature. *Clarkson* v. *Hudson River R. R. Co.* (2 Kern., 304) was decided upon the ground that powers and privileges conferred by the act of 1850 upon existing corporations were in the nature of benefits, which the companies might or might not accept at their option, and that consequently they were not bound to avail themselves of the provisions of the general act in the acquisition of lands, and is in harmony with the views now expressed.

By the charter of the defendant it had power to regulate its passenger fare within the limits of two and a half cents per

mile; corporations formed under the general railroad act have the power to regulate passenger fares up to three cents per mile. All the powers possessed by the latter class of corporations, by the terms of the act, are possessed by the defendant, and when the act says "all the powers," it means all the powers without restriction or limitation other than those prescribed by the act itself. It follows that the defendant had the right to ask and receive toll and compensation for the transportation of passengers to the extent allowed by the general railroad act, and incurred no penalty for demanding toll and compensation in excess of the charter limit, but not in excess of the limit named in the general act.

This seems to have been the legislative interpretation of the clause from the very cautious provision of the act of 1848, saving from its operation and effect the act of 1847, imposing tolls on freight carried by certain railroads, and the great precision and care exercised in saving corporations created by special charter having right to receive for the carriage of passengers more than three cents per mile, from the restrictive operations of the ninth subdivision of the 28th section of the act. It did not subject corporations possessing by their charters more liberal powers to the restrictive operation of the act. The act was benign toward corporations possessing under their charters less power than was conferred by it upon corporations to be formed under it, by placing both upon the same footing, and was just toward those having greater powers by not subjecting them to its provisions, and thereby diminishing the value of their franchises. The act is not incongruous or inharmonious as thus read. The sections to the provisions of which the existing corporations are made subject, all contain provisions and regulations of more or less importance, to be observed and obeyed by the corporations affected by them, and no part of the section is without meaning or force.

The judgment should be reversed, and a new trial granted, · costs to abide the event.

All concur, except CHURCH, Ch. J., dissenting, and RAPALLO, J., not sitting.

Judgment reversed.