Judgment affirmed, with costs.

| 62 | 499 |
| 133a | 329 |

IN THE MATTER OF THE APPLICATION OF THE BOARD OF STREET OPENING AND IMPROVEMENT, OF THE CITY OF NEW YORK, RELATIVE TO ACQUIRING TITLE TO CERTAIN LANDS FOR A PUBLIC PARK ON GROUNDS KNOWN AS ST. JOHN'S CEMETERY.

*Eminent domain — a cemetery may be taken for a public park — the expense of reinterment is a charge upon the city.*

The Board of Street Opening and Improvement of the city of New York was authorized to lay out parks below One Hundred and Fifty-fifth street, in said city, by chapter 320 of the Laws of 1887, which conferred upon it the powers usually granted in such cases, including authority to condemn "any and all lands, tenements and hereditaments" within the territorial limits stated.

Upon an appeal by the corporation of Trinity Church, owners in fee of St. John's Cemetery, proposed to be taken for a park, from an order appointing commissioners to appraise its value:

*Held*, that the board had power to condemn a cemetery for park purposes, the language of the statute being explicit and without any reservations.

The legislation relative to the *status* of a cemetery reviewed.

That, in case the cemetery was taken, and the relatives of the persons buried there or the church did not attend to the matter of reinterment, it would be the duty of the city authorities to do so.

That such power was to be found in the laws which place all parks under the control of the park department, and which authorize the board of estimate and apportionment to make annual appropriations for the construction and maintenance of the parks, and, also, in chapter 320 of the Laws of 1887.

That, in any event, the expense of reinterment must be borne, directly or indirectly, by the city.

Appeal by the Rector, Church Wardens and Vestrymen of Trinity Church, in the city of New York, from an order, entered in the office of the clerk of the city and county of New York on the 23d day of June, 1891, appointing commissioners of estimate and apportionment, in proceedings to condemn St. John's Cemetery, in the Ninth ward of the city of New York, for the purpose of a public park.

The title to the land was in Trinity Church prior to 1801, when it was set apart by the church as a cemetery, and was so used until 1839, when burials were forbidden by a city ordinance. The church has since maintained and preserved the grounds.

*Stephen P. Nash*, for Trinity church, appellant.

*William H. Clark*, for the Corporation, and *John P. Dunn*, for the Board of Street Opening and Improvement, respondent.

Andrews, J. :

Chapter 320 of the Laws of 1887 authorizes the Board of Street Opening and Improvement, of the city of New York, to select, locate and lay out such and so many public parks in the city of New York, south of One Hundred and Fifty-fifth street, as said board shall from time to time determine. Said act also authorizes the said board, and all persons acting under its authority and by its direction, to enter upon any and all lands, tenements and hereditaments which the board shall deem necessary to be used and converted for the laying out of any park so selected. The said statute also authorized the Board of Street Opening and Improvement, through the counsel to the corporation, to institute proceedings in this court to condemn the lands, tenements, hereditaments and premises required for the purpose of the parks so located.

Pursuant to the authority so conferred, said board selected, located and laid out for a public park certain lands in the Ninth ward of said city, known as St. John's Cemetery, and thereafter, through the counsel of the corporation, having given due notice of the application, presented a petition to a Special Term of this court praying for the appointment of commissioners of estimate. Upon the hearing of such application, the corporation of Trinity Church appeared, through its counsel, and filed a written answer containing objections to the granting of such application, based principally

upon the ground that the said statute did not confer the power to condemn a cemetery for a public park. The court took the matter under advisement, and subsequently an order was made granting the application and appointing three commissioners of estimate, and from that order this appeal is taken.

The statute, under which it is sought to condemn the property, authorizes a condemnation for public parks "of any and all lands, tenements and hereditaments," situated in the city of New York, south of One Hundred and Fifty-fifth street. It would have been impossible for the legislature to have conferred upon the city authorities any broader or more comprehensive authority with regard to the land which might be selected and taken for public parks; neither cemeteries nor any other lands being excepted by the statute. The learned counsel for the appellant concedes that the legislature has the power to authorize the city authorities to select and take the cemetery in question for a public park, but he claims that the power to do so ought not to be deemed to have been conferred upon the board of street opening by the general language of the act. In other words, it is desired to have the court incorporate into the statute an exception in favor of cemeteries, which the statute itself does not contain. The rules applicable to cases of this character have been frequently laid down by the Court of Appeals, and are adverse to the claim made by the counsel for Trinity Church. In *McCluskey* v. *Cromwell* (11 N. Y., 601) the court said: "It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But in the construction both of statutes and contracts the intent of the framers and parties is to be sought, first of all, in the words and the language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either

limiting or extending their operation.   Courts cannot correct sup-
posed errors, omissions or defects in legislation, or vary by construc-
tion the contracts of parties.   The office of interpretation is to bring
sense out of the words used, and not to bring a sense into them."   In
the *People ex rel. Brown* v. *Woodruff* (32 N.Y., 364), the court said :
" It is a dangerous principle to imply power when it is not conferred by
legislative authority in clear and distinct terms.   It is always com-
petent for the legislature to speak clearly and without equivocation,
and it is safer for the judicial department to follow the plain intent
and obvious meaning of an act, rather than to speculate upon what
might have been the views of a legislature in the emergency which
may have arisen.   It is wiser and safer to leave the legislative
department to supply a supposed or actual *casus omissus* than
attempt to do it by judicial construction."   In *Johnson* v. *Hudson
River Railroad Company* (49 N. Y., 462), the court said : " Where
the language is definite and has a precise meaning, it must be pre-
sumed to declare the intent of the legislature ; and it is not allow-
able to go elsewhere in search of conjecture to restrict or extend
the meaning.   (*McCluskey* v. *Cromwell*, *supra*.)   The provision
here is clear and precise, and courts cannot go beyond or outside of
it, under pretext of interpretation, to cure any supposed blunder of
the legislature."   Again in *Benton* v. *Wickwire* (54 N. Y., 223), the
court said : " We do not feel it necessary to go into any discussion
of the distinction in construction between remedial, penal or other
statutes, because we regard it as settled that all statutes must have a
construction according to the language employed, and where no
ambiguity exists courts cannot correct supposed defects."

In the case at bar the language used is free from all ambiguity
and there is no room for interpretation.   The authority given is to
select and take " any and all lands, tenements and hereditaments,"
south of One Hundred and Fifty-fifth street, and for the court to
hold that this language does not include land used for cemeteries,
would be to do precisely what the court of last resort has repeatedly
decided cannot be done.

It is conceded by the learned counsel for the appellant, and it is
a fact, that in this State there is no express statutory prohibition
against the taking of cemeteries under the power of eminent domain,
but he claims that the general legislation of the State has indicated

a plain policy, that such property shall not be taken unless specifically authorized by legislative act, and he cites, in support of this claim, chapter 843 of the Laws of 1868; chapter 133, section 10 of the Laws of 1847; chapter 203, section 34 of the Laws of 1878, and chapter 273 of the Laws of 1866. An examination of the provisions of these statutes does not sustain the claim made by counsel as to what the policy of the State has been, but seems rather to warrant the inference that, in the absence of an express prohibition against taking cemeteries, general statutes authorizing the taking of lands for public purposes will include the same. The said act of 1868 provides that no private or public road shall be laid out or constructed through any grave-yard or burial-ground in this State, unless the remains therein contained are first carefully removed and properly reinterred in some other burying-ground at the expense of the persons desiring such road. This statute certainly does not imply that grave-yards and burying-grounds cannot be taken for roads. On the contrary, it clearly implies that they *can* be taken for roads, but that the remains must first be removed and reinterred. The act of 1847, to establish rural cemeteries, provided that no street, avenue or thoroughfare should be laid out through any such cemetery without the consent of the trustees of such association, except by special permission of the legislature. The act of 1866, incorporating soldiers' monument associations, contains a similar provision; and the act of 1873, incorporating pipe-laying companies, provided that no pipe line should be constructed through any cemetery or burying-ground. The said acts of 1847 and 1866 undoubtedly indicate that the legislature was of the opinion that when the trustees of rural cemeteries, or of soldiers' monument associations, do not consent to the laying out of streets or roads through the lands held by such corporations, special permission of the legislature for such laying out must be first obtained; but such statutes also indicate that the legislature was of the opinion that, in the absence of such prohibition, the general laws authorizing the laying out of streets and roads through private property would authorize the laying out of streets and roads through such lands. So, in regard to the act of 1878, the provision above cited indicates that but for the prohibition the general power conferred by the statute to construct pipe lines would have authorized the construction

of the same through cemeteries and burying-grounds. The inference to be drawn from the prohibition contained in said statutes against the invasion of cemeteries and grave-yards, is, that if the legislature, when it passed the act of 1887, now under consideration, had intended that cemeteries in the city of New York should not be taken for public parks, it would have expressly so declared, and would have inserted in the statute a positive prohibition against taking the same.

It is suggested by the counsel for the appellant that, if the act had provided that the board of street opening might lay out as many parks in the city of New York as it should from time to time determine, taking therefor any cemeteries and burying-grounds that the board might consider it advisable to take, the law would never have met with the approval of the legislature. This may or may not be so. The power conferred upon the city authorities by said act (chap. 320, Laws of 1887) to condemn lands for public parks, is substantially the same as was given to the city by the general act, chapter 86 of 1813. Indeed, many of the provisions of said act of 1887, and of similar statutes, are taken directly from said act of 1813. Now, the reports and records of the courts show that, in several proceedings instituted by the city under said act of 1813, and similar laws subsequently passed, parts of cemeteries have been condemned for streets and public parks. As far back as 1834, a portion of a cemetery belonging to Trinity Church was taken for the extension of Albany street. Later, under the same laws, a portion of the cemetery belonging to the Brick Presbyterian Church was taken for the extension of Beekman street, and in later years a boulevard, several hundred feet in width, was extended directly through a cemetery in the upper part of the city, belonging to Trinity Church, cutting the cemetery completely in two parts, and rendering it necessary that the two parts should be connected by a bridge extending across the boulevard. It is stated by the counsel to the corporation, in his brief, that, in the extension of Lexington avenue, part of the burying-ground of the Harlem Methodist Episcopal Church was taken ; and it appears by a statement, contained in the brief of the counsel for the appellant, that the board of education of this city, under the act, chapter 191 of the Laws of 1883, has recently acquired an old burying ground, situated between First and Second streets, and First and

Second avenues, for school purposes; and in a number of other instances it is well known that portions of cemeteries in this city have been taken for public purposes under said statutes. Under these circumstances, it may be fairly presumed that the legislature which passed the act of 1887 was aware that, under similar statutes, portions of cemeteries and grave-yards had been repeatedly condemned. It is by no means certain, therefore, that if said act of 1887 had, in terms, authorized the taking of cemeteries for public parks, that it would never have met the approval of the legislature. On the contrary, in view of the proceedings which have been taken under similar statutes, and which are matters of notoriety, it is to be presumed that the legislature thought that, in some cases, it might be necessary and proper that old and disused cemeteries should be condemned for public parks, and that it might be safely left to the discretion of the board of street opening to determine in what cases this should be done; and it is to be presumed that, if the legislature had intended that no cemetery, nor portion of any cemetery, should in any case be taken for a public park, the statute would have contained a prohibition against such taking, similar to those found in the other statutes above referred to. At all events, whether the legislature would, or would not have passed the statute, if it had, in terms, authorized the condemnation of cemeteries, as matter of fact, it did pass the statute containing a power to condemn lands for public parks, as broad as that given by former statutes, under which portions of cemeteries have been condemned for streets, parks and other purposes; and if the failure to insert in the statute a prohibition against the taking of cemeteries for public parks was the result of an oversight on the part of. the legislature, or of a misunderstanding by it as to the extent of the powers conferred upon the city authorities, the defect in the statute must be remedied by the legislature itself, and not by the courts.

Again, the counsel for the appellant says that the constitutional provision, which allows private property to be taken for public use, embraces such property only as can be *used* for the public; that there is no possible way in which the human remains contained in the cemetery can be so used, and, therefore, they cannot be taken; that decency, as well as the existing law, requires not that they

should be *used*, but that they should be removed and reinterred in some suitable place; but that the power to do this is not given by the act, nor is it within the power of eminent domain.

It is quite true that such remains cannot be *used* for the purposes of a public park, and also that they cannot be *taken* by the city authorities under the power of eminent domain delegated to them by the legislature. The city authorities can, however, take the fee of the land, which is in the corporation of Trinity Church, and they can extinguish the right of burial in such land, however acquired and in whomsoever vested. It would seem that, as the land has been duly selected as a site for a public park, and proceedings for the condemnation thereof have been instituted, the relatives of persons who have been buried in the cemetery, or the church itself, which still owns the fee in the land, would feel called upon to cause such remains to be removed and properly reinterred. In case this shall not be done, common decency will doubtless require that the city authorities should cause such removal and reinterment. The relatives of the persons buried in the cemetery undoubtedly have authority to cause such removal and reinterment, and the corporation of Trinity Church can easily acquire the same authority. (See chap. 215 of the Laws of 1842; chap. 349 of the Laws of 1873 and chap. 600 of the Laws of 1887.) The provisions of the two last-named acts are clear and explicit, and by proceeding in accordance therewith the church can exercise such power of removal and reinterment without the consent of the relatives of the deceased, and without any notice to such relatives beyond that required by the statute. In case neither the relatives nor the church shall cause such removal and reinterment, it will, undoubtedly, be the duty of the city authorities to cause such removal and reinterment; and there is no doubt but what the city authorities will have ample power in the premises. Such power is to be found in the general provisions of law which place all parks in the city under the control of the park department, and which authorize the board of estimate and apportionment to make annual appropriations for the construction and maintenance of public parks. It is also to be found in said chapter 320 of the laws of 1887, which authorizes said department to construct the parks acquired under that act, and which authorizes the issue of bonds to an amount not exceeding one million of dol-

lars, each year, for the payment of all expenses to be incurred under the authority of the act, including the construction of such parks. The expense of the removal and of such reinterment must, of course, be borne directly or indirectly by the city. If the removal and reinterment are taken charge of by relatives, or by the church, the expense incurred, or to be incurred, therefor will be one of the items of damages to be considered by the commissioners of estimate in making their awards. If the duty of causing such removal and reinterment is devolved on the city authorities, the expense thereof must be provided for either by an appropriation through the board of estimate and apportionment, or out of the proceeds of bonds provided for in section 10 of chapter 320 of the Laws of 1887.

The counsel for the appellant also claims that there is no authority to sustain the decision appealed from, and that it must rest upon the language of the statute conferring the power upon the board of street openings. As above stated, portions of cemeteries have, in quite a number of instances, been condemned for public purposes under statutes whose provisions, so far as the question of the power to condemn is concerned, were substantially the same as those of said act of 1887. While it is true that there is no reported case, in which it has been expressly held that a statute, giving power to condemn any and all lands in certain portions of the city, includes the power to condemn cemeteries, it is equally true that there is no decision holding that such statute does not include that power. So far as the reported cases go, it does not appear that the objection has ever before been taken that the statutes, under which condemnation proceedings have been instituted, did not confer the power to condemn cemeteries. In the *Matter of Albany Street* (11 Wend., 149), it does not appear that any objection was made to the appointment of commissioners of estimate. In that proceeding a portion of a cemetery belonging to Trinity Church was condemned, and when the report was presented to the court, counsel for Trinity Church appeared and objected, not that the statute did not authorize the condemnation of the cemetery, but that such condemnation was not *necessary*. The opinion of Chief Justice SAVAGE indicates that the court entertained great doubt whether the decision of the corporation as to the necessity of the improvement could be reviewed, but it was held that, if it could be reviewed at all, such review could not

be had at that late stage of the proceedings. It is to be presumed that if the learned counsel, who appeared for Trinity Church in that proceeding, had supposed that the statute did not confer upon the corporation the power to condemn a part of the cemetery, he would have made that objection, for as that objection would have gone to the jurisdiction of the court, to entertain the proceedings at all, it would probably have been available at *any* stage of the proceedings.

In the *Brick Church Case* (3 Edw., 155), the chancellor declined to give his consent to a sale of the cemetery owned by that church to the city, because some of the vault owners objected to such sale. It appears, however, that a portion of the cemetery was subsequently taken for the extension of Beekman street, and the report of the referee as to the disposition of the award allowed to the property, as between the church and the owners of vaults and burial plots, is to be found in 4 Bradford's Reports, page 503. The most that can be said upon this branch of the case is, that various proceedings have been taken, at different times, under different statutes, similar to the statute of 1887, for the condemnation of cemeteries or parts of cemeteries for public purposes. There is no reported case in which it appears that the objection of the want of power to condemn cemeteries, as well as other property, was raised, and there is, consequently, no decision to be found, either holding that the statute gave, or did not give, such power. If, therefore, we are to indulge in presumptions at all, it would seem that the fair and natural presumption is that if a proper respect for the remains of the dead, and the feelings of the living, require that cemeteries should *never* be taken for public purposes, every possible objection to such proceedings would heretofore have been raised; and the fact that no decision can be found holding that the objection of want of power was a valid one affords strong grounds for the presumption that such objection was never taken, and the further presumption that it was never taken because it was not considered available.

The fact that the board of aldermen urged upon the board of street opening the importance of taking this particular cemetery for a public park is not a valid ground of objection to the order appointing commissioners. The legislature saw fit to vest in the board of street opening an absolute discretion as to what land should be taken under the act, and it appears that such discretion has been

exercised. Whether the board of street opening was influenced in its action by the representations of the board of aldermen, or by representations made by any other board, or by any person not connected with the board of street opening, is wholly immaterial. The order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Order affirmed, with costs.