## McDaniel v. Ashworth.

### Opinion delivered February 24, 1919.

1. Levees—election of directors.—Acts 1917, p. 623, providing for election of directors of the St. Francis Levee District, instead of their appointment by the governor, took away entirely the power of the governor to make appointments and continued the existing directors in office until their successors should be elected.

2. Statutes—construction—legislative intent.—It is the plain duty of the court, in the construction of statutes, to arrive at the legislative will, and to sweep aside all obstacles in the way of accomplishing it.

3. Levees—directors of districts—elections.—Under the above Act three directors were to be elected in each county in 1918 to hold for one, two and three years respectively; the next election is to be held in 1920, when two directors are to be elected, one to fill out the unexpired term beginning in year 1919 and the other for a full term of three years; thereafter there is to be an election every year; all to be held on the second Tuesday in June.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*W. J. Lamb* and *C. W. Norton,* for appellants.

It was error to sustain the demurrer. The demurrer admits that defendants are holding by virtue of a pretended election held under Act 117, Acts 1917, which election was void. Appellants were duly appointed by the governor according to law and the governor's power of appointment was not revoked by the act of 1917, p. 623. Directors of the district are *officers,* 69 Ark. 460; 84 Ark. 540, and this suit was properly brought under Kirby's Digest, § § 7891 *et seq.* The election held under Acts 1917 was void for irregularities. Acts 1917, p. 623, § § 2, 10, 16, etc.

*Mann, Bussey & Mann,* for appellees.

In construing the Act of 1917 with that of 1893, we must consider the supposed evils to be corrected by the Act of 1917. 40 Ark. 448; 45 *Id.* 387; 48 *Id.* 308; 120 *Id.* 415; 76 *Id.* 303. The directors elected were duly elected to succeed appellants as the governor could not appoint after the passage of the act of 1917 and the demurrer was properly sustained. 10 N. J. Law 20; 25 N. W. 176; 34 *Id.* 693; 54 N. Y. 83. There were no irregularities in the election avoiding it. Appellees are not usurpers. 50 Ark. 266. Appellants were out of possession of the office and must show superior right. Directors of levee boards are not officers. 84 Ark. 537; 59 *Id.* 513 and the suit was not properly brought. Kirby's Digest, § § 7984-5. The demurrer was properly sustained, *supra.*

McCULLOCH, C. J. Appellants and appellees are rival claimants to the positions of directors of the St. Francis Levee District in the county of St. Francis. Appellants assert their right to the positions under appointments made by the governor in the years 1917 and 1918, and appellees base their claim on an election held on the second Tuesday in June, 1918, pursuant to a statute on the subject enacted by the General Assembly of 1917. Acts 1917, p. 623.

This action was instituted by appellants in the circuit court of St. Francis County under authority of Kir-

by's Digest, sec. 7981, *et seq.,* commonly known as usurpation of office statute, and it is contended by appellees, in the first place, that the position of the director of the St. Francis Levee District is not an office within the meaning of the law and that the statute referred to creates no remedy with respect to it. However, we pass from that question and proceed to the more important ones which determine the respective rights of the parties to hold the position of director, since our conclusions on those questions settle the case against appellants.

The trial court sustained a demurrer to the complaint, and the appeal is from a judgment dismissing the action. The complaint not only asserts the right of appellants to the positions claimed, but sets forth irregularities in the election under which appellees hold, but, if the claim of appellants to the positions in question rests on no legal foundation, then they are in no position to question the right of the appellees to hold the positions of directors. The St. Francis Levee District was created by an act of the General Assembly of 1893 (Acts 1893, p. 24) and the three directors from each of the eight counties in the district were designated by name in the statute, but it was provided that the governor should from year to year appoint a director for each county for a term of three years who should hold "from the second Tuesday of the May following and until his successor is appointed and qualified." The general statute was not changed with respect to the appointments of directors until the enactment of the act of 1917, *supra,* which provides for the election of directors instead of appointments by the governor. That statute provided that the first election should be held on the second Tuesday in June, 1918, and that three directors from each county should be elected at that election, one to hold for three years, one for two years, and one for one year "or until his successor is elected and qualified." Sec. 2, 10. Section 16 of the last statute provides that the "directors elected on the second Tuesday in June, 1918, as provided herein, shall succeed to and take the place of the directors of said

levee district now in office, as provided in section 2 of the act.''

Appellants contend that the act of 1917 was not intended to disturb the old scheme for appointments by the governor until the first election on the second Tuesday in June, 1918, should be held, and that they, as appointees of the governor in 1917 and 1918, respectively, were legally placed in the position and that they are, therefore, in a situation to challenge the integrity of the election held in 1918 to elect their successors. On the other hand, the contention of appellees is that the purpose of the new statute is to cut off the power of the governor entirely with respect to appointments to those positions, at least so far as concerned regular appointment (not to fill vacancies), and that the statute in express terms continued the old directors in office until their successors should be elected at the first election provided for in the new statute.

Our conclusion is that appellees are correct in their contention, and that appellants have no authority under the appointments of the governor to hold the position of levee director. It is evident from a consideration of the statute that its dominant purpose was to work an immediate change in the method of filling those positions and to withdraw entirely the power of the governor to make appointments. The first section of the statute declares in unmistakable terms that the members of the board of directors of the St. Francis Levee District "shall be chosen and elected by vote of the residents within the county owning real estate within said district, etc.'' The second section declares when the first election shall be held. Section 10 provides for the number of directors to be elected at that time, and section 16 provides that the three directors elected at that time "shall succeed to and take the place of the directors of said levee district now in office.'' It would be difficult to discover language expressing more clearly the legislative intent to take away the power of the governor to make these appointments and to provide for an election at a stated time to elect three directors

from each county to succeed those who were in office at the time of the passage of the statute. The language used necessarily takes cognizance of the provisions of the old statute to the effect that the directors appointed pursuant thereto should hold not only for the length of time prescribed, but until their successors should be elected, and in recognition of that existing law it was declared in the new statute that the directors elected at the first election in 1918 should succeed those who would hold over until that date by virtue of the provisions of the former statute. To permit the appointments made by the governor after the enactment of the statute to stand would be to disregard the manifest purpose of the lawmakers to take away that power, and to lodge it in the land owners of the district to be exercised at elections held as prescribed in the statute. In order to reach this interpretation of the statute it is not necessary, as contended by counsel for appellants, to read into the statute express words extending the terms of the old directors. That was already provided for under the old statute, which extended the tenure of the directors until their successors should be selected and qualified, and the legislative will was completely accomplished in the new statute merely by providing when their successors should be elected.

We are of the opinion, therefore, that the trial court was correct in its interpretation of the statute.

But there is still a more serious question in the case to be determined before the controversy is settled. There is some conflict in the language of the statute with respect to the time of holding the elections which might affect the validity of the whole statute unless those conflicts can be reconciled or the intention of the law makers be otherwise definitely ascertained. In other words, there are in different sections of the statute two apparently conflicting provisions with respect to the time of holding elections— conflicts which appear if the language of the statute be accepted literally—and if the provisions of one of the sections be accepted as written it makes impossible the obvious scheme attempted to be created in the other section.

Section 2 is one of those referred to, and reads as follows:

"The first election to be held, under the provisions of this Act, shall be held on the second Tuesday in June, 1918. The second election shall be held at the general election in 1920, and an election shall be held at the general election every two years thereafter. The directors elected at the first election in June, 1918, shall meet for the purpose of taking oath of office and for organizing, selecting a president and secretary and such other officers as are needed, on the first Tuesday in July, 1918. The voting place of such election in each county within said district shall be selected and designated by the county board of election commissioners in each of the counties respectively."

The other is section 10, which reads as follows:

"The number of directors to be elected at each election herein provided for, shall be as follows: There shall be three elected from each county in the St. Francis Levee District at the first election, whose term of office shall be as follows: The one receiving the highest number of votes in each county shall represent his county on said board for three years; the one receiving the second highest number of votes in each county shall represent his county on said board for two years; the one receiving the third highest number of votes in each county shall represent his county on said board for one year, or until his successor is elected and qualified. At the annual election in 1920 and every year thereafter, there shall be one director elected from each county, whose term of office shall be for three years."

It will be noted that section 2 provides that the second election under the statute "shall be held at the general election in 1920, and an election shall be held at the general election every two years thereafter," while section 10 provides for an annual election "at the annual election in 1920 and every year thereafter," and that there "shall be one director elected from each county, whose term of office shall be for three years."

It is perfectly clear, however, from the language of the statute that the regular terms of the directors are fixed at three years, and it would be absolutely impossible to carry out the scheme if the provision for an election only every two years after the year 1920, as prescribed in section 2 is to control. It is equally clear that the Legislature really intended an election every year, so as to carry out the scheme for three-year terms, with one of the terms expiring each year. Such is the express language of section 10.

The only question left is whether or not that manifest intention of the law makers must be thwarted by reason of the fact that in section 2 it is provided that there shall be an election every two years after the year 1920. Section 2 also declares that the second election shall be held "at the general election in 1920," but other parts of the statute show clearly an intention to have the election each year held on the second Tuesday in June. This is made clear in section 3 prescribing the duties of the county boards of election commissioners to give notice of the elections by publication in a newspaper in a prescribed form, reciting that the election be held "on the second Tuesday in June———for the purpose of electing———directors from this county for the St. Francis Levee District." This provision conforms to section 10 in providing for annual elections and it is also in conformity with other provisions of the statutes covering several sections, which prescribe fully the method of holding the elections and the selection of the voting place, which goes to show that it was not intended by the Legislature that these elections should be held at the regular bi-ennial general elections for the purpose of electing county, district and State officers. The last paragraph of section 2 expressly authorizes the election commissioners to designate the voting places and that duty would be entirely superfluous if the elections were to be held at the time of the general elections, for the voting places are otherwise provided for in the general election statute. It is true there is a slight inconsistency apparent in section

10 in failing to provide for annual elections in 1919. It is reasonable, however, to suppose that the framers of the statute intended by this expression to have no election in 1919 on the theory that at the election in 1920 two directors should be elected, one to succeed the man who had been elected in 1918 for two years, and also one to fill out the unexpired term which would begin in 1919. That section provides that the one year man elected in 1918 should hold "until his successor is elected and qualified," showing that the framers of the statute had in mind that it was necessary to extend his tenure until his successor could be elected at the annual election in 1920. The purpose was to authorize a special election in 1918 for the purpose of filling the board by the election of three members, and then to begin the regular annual election in the year 1920, and for holding them on the second Tuesday of June of each year.

It being clear from the language of the statute, taken as a whole, what the Legislature meant, how are we to view the other provisions apparently in irreconcilable conflict, so as to carry out the legislative will? Or shall we declare the statute void merely because there are found in it provisions which apparently conflict with what is otherwise the manifest intention of the lawmakers?

It is not difficult to find precedents in decisions of this court for discarding entirely that part of the statute which conflicts with what is found to be the obvious intention of the lawmakers. It is unnecessary to speculate as to what was the cause of this apparent conflict, whether by an inadvertence on the part of the lawmakers, or otherwise. What we are most concerned with, and that which is the plain duty of the court in the construction of statutes, is to arrive at the legislative will and to sweep aside all obstacles in the way of accomplishing it. In the case of *Haglin & Pope* v. *Rogers,* 37 Ark. 491, Mr. Justice Eakin, speaking for this court, said that it was the duty of the court in order to reach the true intention of the lawmakers "to disregard the ordinary significance of the language." He quoted with approval the decision of this

court in *Woodruff* v. *State,* 3 Ark. 285, where it was held "that when the intention of a statute should be discovered, it ought to be followed, although it might seem contrary to the letter." In the case of *Hackett City* v. *State,* 56 Ark. 133, the court quoted with approval from the opinion of Mr. Justice Brewer in *Railway* v. *Commissioners of Wyandotte County,* 16 Kans. 587, as follows: "Where there is no way of reconciling conflicting clauses of a statute, and nothing indicating which the Legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on this subject." The quotation was given application in the case just cited by disregarding one of the two apparently conflicting provisions in a statute and in upholding what was conceived to be the manifest intention of the lawmakers. In *Garland Power & Development Company* v. *State Board of Railroad Incorporation,* 94 Ark. 422, the rule which has been followed in several later cases was declared by the court as follows: "In order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted." In that case a legislative mistake had been made in the language used in declaring what board should have authority to grant franchises to corporations of the character in question. The statute provided that "the State Board of Railroad Commission" should have power to grant such franchises, but there was in fact no board in State answering to that designation. There was a board or commission called "The Railroad Commission of Arkansas" and another designated in the statute as the "State Board of Railroad Incorporation," and we held that it was clear from the whole of the statute that the lawmakers meant to confer that power upon the State Board of Railroad Incorporation, and we disregarded the particular language used, striking out words and substituting others, so as to accomplish the legislative will. The same doctrine was announced in the case of *Snowden* v. *Thompson,* 106 Ark. 517, and in *State ex rel.* v. *Trulock,* 109 Ark. 556. The

whole subject was reviewed in the case last cited and the doctrine was made plain that the duty of the courts in interpretation of statutes was to endeavor to ascertain from the language used the true intention of the lawmakers, and when that intention was ascertained to disregard everything which was in conflict with that intention, and, if necessary, to omit words or substitute others so as to make the statute harmonize with the manifest will of the lawmakers.

Applying that wholesome rule, having readily ascertained from the language of the whole statute what the Legislature meant, we have only to disregard the conflicting provision in section 2 to the effect that the elections shall be every two years after 1920, and the statement that the election shall be held ''at the general election in 1920.'' Those are the only provisions that are found in conflict with the other provisions and the entire harmony of the statute is preserved by disregarding them.

Under the statute as thus construed, three directors were to be elected in each county in 1918 to hold for one, two and three years respectively. The next election is to be held in 1920, and two of the directors are to be elected, one to fill out the unexpired term beginning in the year 1919, and the other for a full term of three years. Thereafter there is to be an election every year, and all of the elections are to be held on the second Tuesday in June.

This view of the statute makes the judgment of the circuit court correct, in every particular, and it is, therefore affirmed.

HART, J., (dissenting). Mr. Justice Wood and I dissent from the majority opinion on the ground that there is an invincible repugnancy between sections 2 and 10 of the act under consideration, and that the act is therefore inoperative and void. We are not unmindful that it is the duty of courts to seek to ascertain and carry out the intention of the Legislature in its enactment of a statute and that they are bound, when practicable, so to construe

the statute as to give it force and validity, rather than to avoid it or render it nugatory. So that it has been held that the court may disregard the literal meaning of a word when it is obvious from the act itself that the use of the word has been a clerical error. *Haney* v. *State,* 34 Ark. 263; *Pryor* v. *Murphy,* 80 Ark. 150, and *Bowman* v. *State,* 93 Ark. 168.

It has also been held that to carry out the intention of the Legislature it is sometimes found necessary to read the conjunctions, "or" and "and," one for the other. *Williams* v. *State,* 99 Ark. 149. Also in the *Garland Power & Development Co.* v. *State Board of Railroad Incorporation,* 94 Ark. 422, the court held that in order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted. There the court held that the board designated in the act "The State Board of Railroad Commission," meant "The State Board of Railroad Incorporation." There was no such board as that designated in the act and the court held that it was obvious from the context of the act that the Legislature did not mean to create a new board, but only meant to confer additional power upon a board already created. Therefore it held that by clerical error "The State Board of Railroad Incorporation" was called "The State Board of Railroad Commission." That this was the view that the Legislature had is shown by the cases cited to support the opinion. Other cases are cited in the majority opinion to the effect that in order to harmonize the language of the act, the literal meaning of words often must give way to carry out the manifest intention of the Legislature. These cases, however, recognize the rule we are contending for. Otherwise any statute could be harmonized by cutting out such parts as the court might conjecture the Legislature would have left out, in order to prevent such parts being repugnant to another part and thus making the statute inoperative and void. It is manifest from all these decisions that where the meaning of the act is plain and there is nothing in it to call for the substitution of words, the court in constru-

ing the act is not at liberty to make it. The reason is that the court may not allow conjectural interpretation to take the place of judicial ascertainment. So it is generally held that if an act of the Legislature is so conflicting and inconsistent in its provisions that it cannot be executed, it is incumbent upon the court to declare it void and inoperative; otherwise the court would usurp the functions of the Legislature.

As said by the court in the *City of Pittsburg* v. *Kalchthaler,* 114 Pa. St. Rep. 547: "We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law-making power. It is a practice to be avoided and not followed. It has been condemned by many text writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment."

Another rule applicable to the construction of statutes is that when the lawmakers make use of words of definite and well-known sense in the law, they are to be received and expounded in the same sense in the statute. The rule was clearly expressed in *Johnson* v. *Hudson River Railroad Co.,* 49 N. Y. 455, as follows: "The language of the act being explicit, and the words free from ambiguity and doubt, capable of being read and understood, expressing plainly and distinctly the sense of the framers of the act, there is no occasion to resort to other means of interpretation. Where the language is definite and has a precise meaning, it must be presumed to declare the intent of the Legislature, and it is not allowable

to go elsewhere in search of conjecture to restrict or extend the meaning.''

These canons of construction are well settled; but the chief difficulty lies in the application of them to a given case. Now the object of the statute was to change the method of selecting members of the board of directors of the St. Francis Levee District from appointment by the governor to an election by the owners of real estate in the district in the various counties. Acts of 1917, Vol. 1, p. 623.

Section 2 provides that the first election to be held shall be held on the second Tuesday in June, 1918; that the second election shall be held at the general election in 1920 and that an election shall be held at the general election every two years thereafter. The words ''general election'' are used both in the Constitution and in the statute to denote the day on which State and county officers are elected. Article 3, section 8, of the Constitution of 1874 and section 2762 of Kirby's Digest as amended by the Act of March 3, 1915, p. 402. The section of the Constitution just referred to provides that the general elections shall be held biennially on the first Monday of September, but that the General Assembly may by law fix a different time. Hence the words, ''general election,'' have acquired not only a definite and fixed legal meaning, but they are well understood in common speech to mean the day on which State and county officers are elected. And in this connection it may be said that when the time and place of holding an election are fixed by the Constitution or the Legislature, as in the case of a general election, all must take notice of the time and place of holding the election whether there is a publication or not. *Wheat* v. *Smith*, 50 Ark. 266, and *Hodgkin* v. *Fry, Collector,* 33 Ark. 716.

Section 10 of the act provides for an annual election in 1920 and every year thereafter. It therefore fixes a definite time and place, and also provides a definite method for holding the election. The time and place are the substance of every election and it is therefore essen-

tial to the validity of every election that it be had at the time and place provided by the law.

The authority to hold an election at one time will not warrant an election at another time and an election held at a time and place not fixed by the law itself will be void. *Merwin* v. *Fussell,* 93 Ark. 336. A comparison of sections 2 and 10 will show that the first section provides for biennial elections to be held at the time and place for holding the general elections and the latter section provides for special annual elections to be held at a wholly different time and place. The language used in each section is plain and unambiguous. In legal parlance as well as in common speech it has a fixed and definite meaning and one that is commonly understood by every voter. The property owner could not tell from reading the act which scheme the Legislature intended to adopt. This is left to conjecture and speculation. Hence it seems to us that the opinion of the majority substitutes the judgment of the court for that of the Legislature. In other words, the court by judicial declaration has usurped the legislative function.

It has often been said that the action of the court in substituting its judgment for that of the majority in order to carry out a policy which it deems to be wise, politic, or just, makes shipwreck of the symmetry of the law.

We are of the opinion that the language of the two sections are in invincible repugnancy and render the act inoperative and void. We therefore respectfully dissent from the opinion of the majority in the respect herein pointed out.

WOOD, J., concurs in this dissent.