ARK. STATE HIGHWAY COMM. *v.* MABRY.

5-1655                                        315 S. W. 2d 900

Opinion delivered June 23, 1958.

[Rehearing denied September 29, 1958.]

*Neill Bohlinger, W. R. Thrasher* and *Dowell Anders,* for appellant.

*Rolland Bradley, Francis Donovan* and *Wood & Smith,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee, Mabry, a resident of Faulkner County and a user of the ferry in question, on December 2, 1957, filed his petition alleging "Petitioner lives in a portion of Faulkner County near the Arkansas River and near State Highway 60. The river crossing at this point is by ferry known as Toad Suck Ferry presently being operated by a private contractor charging toll. Petitioner frequently uses such ferry and under exacting circumstances pays toll therefor. Act Number Three, First Extraordinary Session, 1957, Sec. 3 appropriated, payable out of the State Highway Department fund, for ferries in the state highway system '$25,000.00 which shall be paid for the purchase of the ferry on the Arkansas River which connects Highway 60 between Faulkner County and Perry County.' Petitioner alleges that such act is mandatory but that the State Highway Commission has refused to comply with the terms thereof. Compliance

would result in purchase by the state and free operation of the ferry. Wherefore, petitioner prays for a writ of mandamus directed to the State Highway Commission compelling it to issue a voucher to the Auditor of the State upon which a warrant for the purchase of the above mentioned ferry may be completed; and in the alternative for a declaratory judgment defining the obligations of the State Highway Commission with reference to the foregoing act.''

Appellant, Highway Commission, demurred to the petition on the grounds that the trial court lacked jurisdiction, that appellee lacked legal capacity to sue, and that his petition did not state a cause of action. From a decree holding that the provision in Act 3 of 1957, which recites that there shall be paid out of the State Highway Department Fund for ferries in the State Highway System ''$25,000 which shall be paid for the purchase of the ferry (known as Toad Suck Ferry) on the Arkansas River which connects Highway 60 between Faulkner County and Perry County'' was mandatory and directing appellant to procure issuance of the voucher for $25,000 payable to Clay Cross for the purchase of the ferry, comes this appeal.

All evidence presented in the trial court was contained in the following stipulation of the parties: ''Section 2-A of Act 451 of 1953, Arkansas General Assembly provided $20,000.00 for the construction, operation and maintenance of a river toll ferry on the Arkansas River to connect State Highway No. 60 between Faulkner County and Perry County, by State Highway Commission Minute Order No. 570, dated January 24, 1954, the State Highway Director was ordered to prepare specifications and request bids for construction, maintenance and operation of toll ferry services at said location . . . Plans and specifications were prepared and by duly advertising, bids on the contract for the ferry operation were asked for . . . The only bidder was Mr. Clay Cross, who was notified of his award of the contract on October 5, 1955. The contract between the Highway Commission and Mr. Clay Cross for

the construction and operation of the ferry was signed and the performance bond executed on October 17, 1955. The Work Order for the construction of the ferry to begin was issued on November 8, 1955. The ferry barge was accepted by the Highway Department and put in operation by Clay Cross in June, 1956. Under Item 12 of the contract the State had agreed to contribute $20,-000.00 toward the payment of the floating equipment and under Item 22 the payment was to be made to the contractor based upon certified paid invoices presented by the contractor showing sums actually expended for the floating equipment. (Payment of the $20,000 was made to Cross on receipt of the invoices) . . . The ferry began operation in June 1956, and is presently in operation. The traffic count for 1956 showed a daily average vehicle traffic of 21. . . . The traffic count for 1957 is attached as Exhibit O and shows the average daily traffic of 11 vehicles. . . . Act 3 of the 1957 Extraordinary Session of the Arkansas General Assembly, the Highway Department's biennial appropriation, provided 'for maintenance, c o n s t r u c t i o n and repair . . .; and $25,000.00 which shall be paid for the purchase of the ferry on the Arkansas River which connects Highway 60 between Faulkner and Perry Counties . . .' On January 8, 1958, by letter to the State Highway Commission, Mr. Clay Cross offered to sell his interest in the ferry to the State for $25,000.00 and submitted thereon certain items as being in excess of the $20,000.00 expenditure on behalf of the State which was contributed toward the acquisition of physical assets necessary for the operation of the ferry . . . The Commission officially rejected this offer to purchase on January 24, 1954. The Highway Department inventoried and valued the assets of the ferry at $3,-035.15, . . ."

Act 3 above was "An Act to make appropriation for the State Highway Department from the State Highway Department fund for the construction, reconstruction, and maintenance of roads and bridges in the State Highway System for the biennial period ending June 30,

1959, and for other purposes. Be it enacted by the General Assembly of the State of Arkansas: Section 1. There is hereby established for the State Highway Department, for the biennial period ending June 30, 1959, the following maximum number of regular employees and the maximum salary of such employees; and no greater salary than established herein, except as modified in Section 2 hereof, shall be paid to any employee from appropriations hereinafter made for said Department. Provided further, that it is the intention of this act to make available the maximum salaries provided herein to secure efficient, skilled employees; and in determining the annual salaries of such employees the administrative head of such Department shall take into consideration ability and length of service, but it is not the intention of this act that the maximum salaries shall be paid unless such qualifications are complied with and then only within the limitations of the appropriations and funds available for such purpose.'' Then follows the ''Maximum number of employees and the maximum annual salary rates,'' to be paid for the periods 1957-58 and 1958-59. Section 2 provides for payments for overtime work of certain employees. Section 3: ''There is hereby appropriated, to be payable out of the State Highway Department Fund, for the operation of the State Highway Department, for construction, reconstruction, maintenance, betterment and replacement of roads, bridges and ferries in the State Highway System for the biennial period ending June 30, 1959, the following:

| Item | Fiscal Years | |
|---|---|---|
| | 1957-58 | 1958-59 |
| (1) Regular Salaries | $ 8,662,900 | $ 9,727,600 |
| (2) Extra Help | 4,700,000 | 4,800,000 |

(3) For maintenance, construction, reconstruction, repair, replacement, relocation, betterment, and operation of roads, bridges and ferries in the State Highway System; including the acquisition of necessary rights-of-way; the purchase, repair and operation of equipment; the purchase of materials

and supplies; the payment of departmental current expenses, and the payment of travel expenses, and $25,000.00 which shall be paid for the purchase of the ferry on the Arkansas River which connects Highway No. 60 between Faulkner and Perry Counties, ........................................................$65,280,000    $71,395,000

Total amount appropriated ......$78,642,900    $85,922,600''

Section 4 has to do with the minimum wage scale paid certain employees. Section 5 relates to holidays allowed employees. Section 6. ''Provided that any unexpended appropriation balance remaining on June 30, 1958, in the appropriation authorized in Section 3 hereof for Item (1) Salaries, Item (2) Extra Help, and Item (3) Construction, Maintenance and Operation shall, upon resolution of the State Highway Commission, be brought forward and made available for the purposes provided for in Item (3), in Section 3 hereof, during the fiscal year beginning July 1, 1958 and ending June 30, 1959.'' Section 7 provides that should any provision of the act be found unconstitutional or void it should not affect the remainder, declares the provisions of the act severable and repeals all laws in conflict therewith.

The primary and decisive question presented is whether Act 3 of 1957 above made it mandatory on the Highway Commission to pay for ''Toad Suck Ferry'' $25,000, ——no more and no less——, by using the following language: ''. . . $25,000 which shall be paid for the purchase of the ferry on the Arkansas River which connects Highway No. 60 between Faulkner and Perry Counties.''

After a careful review of the record presented we have concluded that the trial court erred in refusing to sustain appellant's demurrer. In reaching this conclusion we hold that the above provision in Section 3 of Act 3 above, is not mandatory on the highway commission, but is discretionary and it was the intention of the legislature that it be so in the circumstances. Clearly Act 3 above was an appropriation act only, fixing maximum amounts to be expended by the Highway

department for salaries of employees, for payments for highway bridges, ferries, etc., and was not a requirement or mandate to spend specific amounts. In other words, the highway department (or state agency) was not required to spend all the monies appropriated. This act clearly was in compliance with article 5, Sec. 29 of our State Constitution, which requires the maximum amount of any appropriation act to be stated specifically in dollars and cents. As we view this case, the amounts to be spent were discretionary. Our rule is well established that mandamus may be resorted to only when an official or agency refuses to perform a purely ministerial act which a statute imposes upon them. See *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742.

As pointed out Act 3 above was purely an appropriation act. It appears not to be contended by appellee that in spending the maximum allotments for every purpose specifically set forth in the act, — except for the one purpose here involved—, the highway department could not use its discretion. But, says appellee, the appellant had no choice or discretion in the purchase of this ferry but to spend $25,000 of the taxpayers' money for it, regardless of whether it was worth that amount or could be procured for less money. As indicated, it was stipulated that the Highway Department's inventory showed this ferry to be worth only $3,035.15. Had this directive to provide and spend this amount been provided in a separate act, — as was done in Act 451 of 1953, above, providing for the purchase of the barge—, then we would not hesitate to hold with appellee's contention for the reason that the intent and purpose of the legislature would be clear. It becomes necessary, therefore, to construe the meaning of this Act 3 above and in doing so one of our cardinal rules is first to endeavor to ascertain the intent of the legislature from the language used in the statute. See *McDaniel* v. *Ashworth,* 137 Ark. 280, 209 S. W. 646. Further, the rule is well established that where the language is ambiguous, we may not only look to the language but to the subject matter of the act, the object to be accomplished, pur-

pose to be served, the expediency of the act, the remedy provided, the consequences following its enactment and various extrinsic matters which may throw some light on the legislative intent. See *Holt* v. *Howard,* 206 Ark. 337, 175 S. W. 2d 384. "The primary rule in the construction of a statute is to ascertain and give effect to the intention of the lawmakers, and this intention is to be ascertained from a consideration of the entire act. In arriving at the intention of the lawmaking power it is proper to consider the object to be secured, the circumstances attending the adoption of the measure, and its relation to other laws," *Perry County* v. *House,* 196 Ark. 317, 117 S. W. 2d 342. "In construing a statute, the intention of the legislature is to be ascertained not merely from the language of the act taken as a whole, but, where the language is not free from ambiguity, from the application of the act to existing circumstances and necessities. When the words of a statute are not explicit, the intention of the legislature is to be collected from the context, by considering the subject matter, by looking to the occasion and necessity for the law and the circumstances under which it was enacted, to the mischief to be remedied, the object to be obtained and the remedy in view, by comparing one part with the other, and giving effect to the whole, by looking to the old law upon the subject, if any, and other statutes upon the same or similar subjects, by considering the effects and consequences of a particular construction, and by looking to contemporaneous legislative history and contemporaneous construction of the statute. 25 R. C. L. 1012, 1013," *Cooper* v. *Town of Greenwood,* 195 Ark. 26, 111 S. W. 2d 452. We do not think that here the legislature ever intended that the Highway Department should pay the maximum of $25,000 allotted for the purchase of the ferry, in any event. "When the courts are called on to review and control the official acts of an officer in a co-ordinate branch of the government, they should proceed with extreme caution and circumspection, and the right of the courts to exercise this power should be manifestly clear and free from doubt

and not made to depend upon uncertainties or the doubtful construction of a statute," *Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121.

To carry out the legislative intent the word "shall" may in certain circumstances, we think, as here presented, be construed as the equivalent of "may". "Ordinarily the words 'shall' and 'must' are mandatory, and the word 'may' is directory, although they are often used interchangeably in legislation. This use without regard to their literal meaning generally makes it necessary for the courts to resort to construction in order to discover the real intention of the legislature. Nevertheless, it will always be presumed by the court that the legislature intended to use the words in their usual and natural meaning. If such a meaning, however, leads to absurdity, or great inconvenience, or for some other reason is clearly contrary to the obvious intention of the legislature, then words which ordinarily are mandatory in their nature will be construed as directory, or vice versa. In other words, if the language of the statute, considered as a whole and with due regard to its nature and object, reveals that the legislature intended the words 'shall' and 'must' to be directory, they should be given that meaning," Crawford-Statutory Construction, Sec. 262, p. 519.

Accordingly, the decree is reversed and the cause remanded with directions to sustain appellant's demurrer.

HARRIS C. J., and WARD and ROBINSON, JJ., dissent.

PAUL WARD, Associate Justice, dissenting. The majority opinion contains so many unsupported conclusions and irrelevant quotations that it is difficult to determine the real basis on which it rests.

I do agree however with two statements contained in the opinion. One: The primary and decisive question is whether said Act 3 of 1957 is mandatory. Two: What was the *intention* of the legislature as expressed in the Act? Since the majority appear to take the position that

the answer to the first question depends on the answer to the second question, all of my remarks shall be directed to the latter.

As indicated above the majority must have found it was *not* the *intention* of the legislature that $25,000 should be paid for the ferry. The pertinent part of said Act 3 reads as follows: "and $25,000 which shall be paid for the purchase of the ferry   \*   \*   \*," In view of the **fact that the wording** of the Act expresses the *intent* in clear language it was necessary, of course, for the majority to assign various reasons and resort to certain rules of statutory construction in order to show the *intent* was something other than that stated in the Act itself. In doing this the majority have overlooked the most fundamental rule of all, to-wit: none of these aids to interpretation shall be employed unless the language of the Act is ambiguous. Nowhere has the majority pointed out in what way the language in said Act 3 is ambiguous. At any rate it will be interesting to examine the various attempts by the majority to explain why the Act does not mean what it says.

(a) Nearly two pages in the majority opinion are used to set out items appropriated in Act 3. Just what bearing all these other items have on the item in question is not shown. None of them have the mandatory language contained in the questioned item.

(b) After setting out the Act the majority say it is "purely an appropriation act." By this it is implied that mandatory language could not be contained in an appropriation act. If this is what is meant then the majority refute their own argument, for they state: "Had this directive to provide and spend this amount been provided in a separate act, as was done in Act 451 of 1953 \* \* \* then we would not hesitate to hold with appellee's contention \* \* \*," Reference to said Act 451 shows it to be an *appropriation act* like Act 3 and also that it is not a *separate* act, but deals with numerous items just like Act 3.

(c) In speaking of Act 3 the majority make this statement: "This act clearly was in compliance with Amendment [Article] 5, Sec. 29 of our State Constitution, which requires the maximum amount of any appropriation act to be stated specifically in dollars and cents". Just what this is supposed to prove entirely escapes me. In the first place $25,000 is a maximum amount. Surely the majority do not mean that the word "maximum" is necessary in an appropriation bill to make it effective.

(d) The majority call attention to the fact that the Highway Department's inventory showed the ferry assets to be only $3,035.15. Again I am unable to see how this throws any light on the *intention* of the legislature. Moreover it is not within the province of this court's powers to question the policy or wisdom of the legislature. Anyway the majority could have pointed out that Cross's itemized statement shows the value of the ferry to be commensurate with the proposed purchase price.

(e) The majority cites several decisions of this court, quoting at length, invoking rules of statutory construction. I thoroughly agree with the rules announced in these decisions. However, as stated at the beginning, they are applicable only when the language to be interpreted is ambiguous. Before the majority invoked these rules as aids to construction they should have pointed out the ambiguities relied upon. Frankly, I can think of none. There is no ambiguity about the amount to be paid, none about the identity of the ferry, and none about the intent to purchase.

I can understand why many people might question the wisdom of the legislature in this instance, but I can't understand how anyone could be in doubt about the intent of the legislature. The essence of my objection to the majority opinion, then, is that it applies well established and salutary rules of statutory construction where there exists no occasion for doing so. This I think, should not be done merely to reach a desired result.