**In re Robert Bruce HENDERSON Debtor.**

**In re Walter Richard DILL and Barbara Kay G. Dill dba Dill and Lewis Farms Debtor.**

**In re Malcolm I. HENRY and Sue J. Henry Debtors.**

**Bankruptcy Nos. BK86–00248, BK86–08088 and BK85–00715.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Feb. 13, 1987.

---

David A. Reed, Livingston, Ala., for debtors—Henderson; Dill.

Claude M. Burns, Jr., Tuscaloosa, Ala., James H. Seale, III, Greensboro, Ala., for debtor—Henry.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

The above styled causes have been consolidated for the purposes of this opinion because they involve common questions of law regarding the eligibility for conversion from a Chapter 11 to Chapter 12. The following shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

The following chart illustrates the facts pertinent to this Court's decision in the cases at bar.

| CASE NAME | PETITION DATE | INCOME FOR PRIOR YR. | TOTAL DEBT | FARM DEBT | NONFARM DEBT |
|---|---|---|---|---|---|
| HENDERSON | 1/13/86 | FARM: 184,000 NONFARM: 0.00 | 425,983 | 424,560 | 1423 |
| DILL | 10/9/86 | FARM: 110,000 NONFARM: 9,600 | 958,164 | 935,541 | 22,623 |
| HENRY | 3/7/85 | FARM: 112,630 NONFARM: 10440 | 393,581 | 385,539 | 8042 |

## CONCLUSIONS OF LAW

On October 27, 1986, President Reagan signed the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, 100 Stat. 3088. The Act created a new bankruptcy chapter intended to aid family farmers as defined by Section 101(17) of Title 11.[1] The legislative history of Chapter 12

---

1. Section 101(17) of Title 11 provides:

    (17) "family farmer" means—

    (A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; or

    (B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family

is replete with statements indicating that Congress passed Chapter 12 in an attempt to rescue the nation's distressed farmers. In the Joint Explanatory Statement of the Conference Committee on the Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986, Pub.L. 99–554 (hereinafter Pub.L. 99–554 or the Family Farmer's Act),[2] it was stated that Chapter 12 was "designed to give Family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair payment."[3] The committee also stated that "[u]nder current law, family farmers in need of financial rehabilitation may proceed under either Chapter 11 or Chapter 13 of the Bankruptcy Code. Most family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under Chapter 11. Unfortunately, family farmers have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable."[4]

When the committee report was called up for approval in the House, Representative Synar stated that the new act accomplished two important objections. Most important in Rep. Synar's mind was to aid "family farmers ... facing that brink of disaster." According to Rep. Synar, these farmers could "now look to [the] Congress and to the [the] Government for new hope."[5]

On October 3, 1986, the Conference Committee Report was called up in the Senate, and numerous Senators expressed their approval for the Family Farmer's Act. Senator Strom Thurmond stated that the Family Farmer's Act was an "extraordinary response to what [was], hopefully, a temporary crisis."[6] In addition, Sen. Thurmond stated the "[t]he legislation [was] meant to assist those farmers who have the true potential to reorganize and to allow them relief from heavy debt burden, and yet allow farmers to pay creditors what [was] reasonable under today's difficult economic situation."[7] Senator Chuck Grassley then added that "hearings in the House and Senate [had] led to the unmistakable conclusion that the Bankruptcy Code doesn't work for farmers."[8] Senator Dennis DeConcini also commented that it had been concluded "that the present structure of the bankruptcy code simply didn't fit the special economic circumstances that attend the family farmer."[9]

The final draft of the Act, signed by the President, provided for the amendment of numerous bankruptcy code sections includ-

and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

    (i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

    (ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

    (iii) if such corporation issues stock, such stock is not publicly traded;

2. The Conference Committee was made up of Representatives Peter W. Rodino, Don Edwards, William J. Hughes, Mike Synar, Dan Glickman, Edward F. Feighan, Hamilton Fish, Jr., E. Clay Shaw, Jr., Carlos Moorhead and Henry J. Hyde. In addition, Senators Strom Thurmond, Orrin Hatch, Chuck Grassley, Dennis DeConcini and Howell Heflin served on the Conference Committee.

3. 132 Cong.Rec. H8999 (daily ed. October 2, 1986).

4. 132 Cong.Rec. H8998 (daily ed. October 2, 1986).

5. 132 Cong.Rec. H9001 (daily ed. October 2, 1986).

6. 132 Cong.Rec. S15075 (daily ed. October 3, 1986).

7. Id.

8. Id.

9. 132 Cong.Rec. S15091 (daily ed. October 3, 1986).

ing Section 1112(d) of Title 11, which was amended to read as follows:

(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable. (emphasis added).

In addition, to the amendment of various code sections, Pub.L. 99–554 provided, in part:

SEC. 302. EFFECTIVE DATES; APPLICATION OF AMENDMENTS.

(a) GENERAL EFFECTIVE DATE.—Except as provided in subsections (b), (c), (d), (e), and (f), this Act and the amendments made by this Act shall take effect 30 days after the date of the enactment of this Act.

(b) AMENDMENTS RELATING TO BANKRUPTCY JUDGES AND INCUMBENT UNITED STATES TRUSTEES.—Subtitle A of title I, and sections 301 and 307(a), shall take effect on the date of the enactment of this Act.

(c) AMENDMENTS RELATING TO FAMILY FARMERS.—(1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act.

(2) Section 1202 of title 11 of the United States Code (as added by the amendment made by section 255 of this Act) shall take effect on the effective date of this Act and before the amendment made by section 227 of this Act. (emphasis added).

The conflict between the wording of Section 302(c) of Pub.L. 99–554 and amended Section 1112(d) of Title 11 has been the source of much dispute. Some courts, when faced with the question of conversion of a Chapter 11 or 13 case, which was filed prior to the effective date of Chapter 12, (hereafter pre-act cases) have held that Section 302(c) prohibits the conversion. These courts, finding no ambiguity in Section 302(c),[10] have strictly construed the section and refused to look to the contrary legislative intent. Other courts have held that Congress intended to allow conversions, although not on a routine basis, from pre-act cases to Chapter 12.[11] These courts have based their decisions on statements made by Congress including the following:

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

132 Cong.Rec. H8999 (daily ed. October 2, 1986).

This Court is cognizant of the various rules of statutory interpretation, and while

---

10. See *In re Groth,* 69 B.R. 90 (Bkrtcy.D.Minn. 1987); *In re Tomlin Farms, Inc.,* 68 B.R. 41 (Bkrtcy.D.N. Dakota 1986); *In re B.A.V., Inc.,* 68 B.R. 411 (Bkrtcy.D.Colo.1986); *In re Albertson,* 68 B.R. 1017 (Bkrtcy.W.D.Mo.1987).

11. *See In re Erickson Partnership,* 68 B.R. 819 (Bkrtcy.D.So. Dakota 1987).

it is "axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.' (citations omitted) ... [I]t is also true that [w]hen aid to construction of the meaning of words, as used in [a] statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may be on 'superficial examination.' (citation omitted) Further, '[a]s in all cases of statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve.'" *The Atchison, Topeka and Santa Fe Railway Company v. United States*, 617 F.2d 485, 490 (7th Cir.1980). Thus, while it has been said, that "[w]hen a statute is clear and unequivocal on its face ... there is no necessity to resort to the legislative history of the Act but that the decision as to its meaning may rest on the words of the statute itself. (citations omitted) ... [T]he plain meaning doctrine has always been subservient to a truly discernible legislative purpose. (citations omitted) The use of the legislative history to determine Congressional purpose is appropriate where the words of the statute are ambiguous or the literal words of the statute would bring about an end completely at variance with the purpose of the Act." (citations omitted) (emphasis added). *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 106–107 (D.C.Cir.1976).[12]

**12.** See also *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir.1975) ("No legislative enactment should be rendered ineffective to attain its purpose if such a construction can be avoided. *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943)); *Director, Office of Workers' Compensation Programs, United States Department of Labor v. O'Keefe*, 545 F.2d 337, 343 (3d Cir.1976) ("Second, the task of statutory construction is one of discerning 'the intent of the legislature.' *United States v. Papercraft Corp.*, 540 F.2d 131, at 136 (3d Cir.1976)."); *United States v. Boyden*, 696 F.2d 685, 687 (9th Cir.1983) ("It is necessary to look to the purpose and intent of a statute when deciding what its terms mean. *District of Columbia v. Carter*, 409 U.S. 418, 420, 93 S.Ct. 602, 604, 34 L.Ed.2d 613 (1973)."); *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985) ("The starting point for interpreting a statute is the language of the statute itself, and absent a clearly expressed legislative intent to the contrary, that language is conclusive. *Consumer Products Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)."); *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1332 (8th Cir.1985) ("We are mindful, though, of the general rule of statutory construction that '[a] particular provision of a statute must be construed with reference to the statute as a whole' and not in isolation. *State v. Brown*, 283 Ark. 304, 306, 675 S.W.2d 822, 824 (1984). In construing these provisions we are guided by the 'cardinal rule' that our primary object is to determine and to effectuate the legislative intent as gleaned form the language of the statute considered in its entirety. *See Arkansas State Highway Commission v. Mabry*, 229 Ark. 261, 266, 315 S.W.2d 900, 904–05 (1958); *Thompson v. Younts*, 282 Ark. 524, 525, 669 S.W.2d 471, 472 (1984). To ascertain such legislative intent, we may properly consider not only the language of the statute but also the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedy provided, and the consequences of various interpretations. *See Mabry*, 229 Ark. at 266, 315 S.W.2d at 904–05; *Hanford Produce Co. v. Clemmons*, 242 Ark. 240, 242, 412 S.W.2d 828, 830–31 (1967); *Mears v. Arkansas State Hospital*, 265 Ark. 844, 846, 581 S.W.2d 339, 341, (1979)."); *Sierra Club v. Train*, 557 F.2d 485, 489 (5th Cir.1977) ("In interpreting statutes, a court's function 'is to construe the language so as to give effect to the intent of Congress.' *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). The most persuasive evidence of Congressional intent is the wording of the statute. *Id.* Upon 'superficial examination,' ... the [u]se of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made. C. Sands, Suterhland's Statutory Construction Section 25.-04 (4th ed. 1973). Such an argument may be waged with extrinsic aids such as the purpose of the statute, *Escoe v. Zerbst*, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), the statute as a whole, or the legislative history indicates an intention that the statute be given a discretionary effect. *United States v. St. Regis Paper Co.*, 2 Cir.1966, 355 F.2d 688. Although a salutary rule of statutory construction prohibits resort to extrinsic aids when a statute on its face appears to be clear and unambiguous, we heed a caution which has been repeated with specific reference to the FWPCAA of 1972 that '[W]hen aid to construction of the meaning of the words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'." *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Exxon Corp. v. Train*, 5 Cir.1977, 554 F.2d 1310 at p. 1322. In the instant case we think it imperative that we examine such aids to determine the intent of

■ It is clear to this Court that Congress intended to provide the family farmer with a viable *reorganization* option.[13] It is inconceivable to the Court, that Congress intended to discriminate against farmers who were forced into bankruptcy prior to the effective date of Pub.L. 99–554. The

drafters of Pub.L. 99–554 clearly anticipated conversions of pre-act cases to Chapter 12 and this Court will give effect to the overwhelming evidence that Congress intended that such conversions be allowed in the equitable discretion of the bankruptcy court.[14]

Congress."); *United States v. Federal Labor Relations Auth.,* 727 F.2d 481, 491 (5th Cir.1984) ("IBPO's contention seems to be based on the maxim "expressio unius est exclusio alterius." The rule of exclusion, however, is only an aid to statutory construction, not a rule of law. The controlling consideration is legislative intent and the maxim can be overcome by strong indicia of contrary congressional intent. *Middlesex County Sewerage Authority v. National See Clammers Ass'n,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981); *Massachusetts Trustees of Eastern Gas & Fuel Associates v. United States,* 312 F.2d 214 (1st Cir.1963), aff'd, 377 U.S. 235, 84 S.Ct. 1236, 12 L.Ed.2d 268 (1964)."); *Reporters Committee for Freedom of the Press v. Sampson,* 591 F.2d 944, 948 (D.C.Cir. 1978) ("However, 'even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent.' *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). *See Neuberger v. Commissioner,* 311 U.S. 83, 88, 61 S.Ct. 97 [101], 85 L.Ed. 58 (1940)."); *In re Arnett,* 731 F.2d 358, 360–361 (6th Cir.1984) ("Our review is guided by principles of statutory construction. The primary function of the courts in construing legislation is to effectuate the legislative intent *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Legislative intent may be ascertained from the clear language of the statute itself or from available legislative materials which clearly reveal this intent. Where the literal language of the statute does not conclusively reveal *legislative intent, the courts must* look beyond literal meaning, analyzing the provision in context with the whole. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974)."); *Sode v. United States,* 209 Ct.Cl. 180, 531 F.2d 531, 535 (1976) ("Helpful in solving this problem are several recognized principles of statutory analysis calculated to expose the correct interpretation of a disputed statute. Prominent among these principles are the established analytical guides 'that the ordinary and commonly understood meaning shall be attributed to the terms employed in the statute, unless a contrary meaning is clearly intended.' *Benton v. United States,* 488 F.2d 1017, 1020, 203 Ct.Cl. 263, 269 (1973), and "that an unambiguous statute should be given effect according to its plain and obvious meaning." *Prudential Ins. Co. v. United States,* 319 F.2d 161, 166, 162 Ct.Cl. 55, 65 (1963). Besides the

above noted fundamental principles of statutory analysis resort to secondary guideposts serve to elucidate the intended purpose and meaning of a statute. As a statute cannot be divorced from the circumstances existing at the time of its passage, the legislative history of a statute provides a certain degree of insight into the Congressional motivation behind a statute. *Akins v. United States,* 439 F.2d 175, 177, 194 Ct.Cl. 477, 483 (1971).")

13. For a discussion of the legislative history of Chapter 12 see pages one through three of this opinion.

14. Supporting the Court's decision to allow conversions of pre-act cases is a distinct but related argument regarding the viability of dismissing the debtor's current case in order to refile under Chapter 12. Clearly such an action would eliminate the problems associated with the conflicting language of Section 302(c) of Pub.L. 99–554 and amended Section 1112(d), because the case would then clearly be outside the realm of section 302(c). However, the courts which have addressed the possibility of a dismissal for the purposes of refiling under Chapter 12 have been troubled by the Supreme Court's decision in *Central Trust Co. v. Official Creditors' Comm. of Geiger Enterprises, Inc.,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). In *Central Trust Company,* the Supreme Court was called on to decide the propriety of the dismissal of a Chapter XI petition which had been filed under the Bankruptcy Act of 1898. The debtor subsequently moved to dismiss its petition on January 9, 1980, approximately three months after Congress passed the Bankruptcy Reform Act of 1978, Pub.L. 95–598 (hereafter the New Bankruptcy Code). When the motion to dismiss was granted by the bankruptcy court, the debtor then immediately filed a petition under the New Bankruptcy Code.

The Supreme Court held that such a dismissal for the purposes of refiling under the New Bankruptcy Code was impermissible. The Court based its decision on Section 403(a) of the New Bankruptcy Code which provided:

A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if [the New Code] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding

## APPLICATION TO FACTS

The starting point in any motion for conversion is a determination of the eligibility of the debtor under the Chapter he/she wishes to convert to. Section 101(17)[15] sets forth the requirements which are necessary for a finding of eligibility under Chapter 12. The debtors in the cases at bar, have each provided the Court with detailed financial testimony. In addition, the debtors have each outlined which of their debts arose from farming operations and which debts were not farm related.[16] After reviewing the testimony of each of the debtors, it is the opinion of this Court, that the debtors each meet the threshold requirements for eligibility under Chapter 12. However, the Court must still determine whether the motions to convert should be granted.

■ The Dill case was filed on October 10, 1986, approximately a month and a half before the effective date of Pub.L. 99–554. The Court has reviewed the testimony of Dill and is satisfied that there exist a substantial likelihood of a successful reorganization under Chapter 12. Thus, it is the opinion of this Court that Dill's motion to convert is due to be granted.

The Henderson case presents the Court with a more difficult decision. The Henderson petition was filed on January 13, 1986, approximately 10 months prior to the effective date of Pub.L. 99–554. The time frame in Henderson causes some concern to the Court, however, after reviewing the debtor's file the Court is convinced that conversion of the case should be allowed.

Henderson clearly is eligible for Chapter 12, and the Court is of the opinion that conversion presents his creditors with the best chance of a successful reorganization.

 The Henry case was filed on March 7, 1985. While the Court is aware that it is embodied with discretion to allow the conversion of the Henry case, it is the opinion of the Court that such a conversion would not be equitable. The case has been pending for almost two years, and the Court is satisfied that allowing the conversion would be an abuse of its discretion.

---

shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [New Code] had not been enacted. 92 Stat 2683 preceding 11 USC (1976) ed. Supp IV).

*Central Trust Co.,* 454 U.S. at 355–356, 102 S.Ct. at 695–696.

After reviewing the current Chapter 12 legislation this Court is satisfied that there exists no section comparable to Section 403(a) of the New Bankruptcy Code which would currently preclude a debtor from dismissing and refiling under the new Chapter 12. While it may be argued that Section 302(c) is comparable to Section 403(a) this Court disagrees. Section 403(a) clearly stated that cases pending at the time the

New Bankruptcy Code was passed were to be treated "as if the [the New Code] had not been enacted." This language is clearly more stringent than that found in Section 302(c) of Pub.L. 99–544. The fact that Congress did not prohibit dismissal for the purposes of refiling under Chapter 12 lends additional credence to this Court's conclusion that conversions of cases filed prior to the effective date of Pub.L. 99–544 is not prohibited by Section 302(c).

**15.** For text of 11 U.S.C. Section 101(17) see footnote number one.

**16.** The testimony of the debtors is outlined in the chart printed under "Findings of Fact."